## STATE *v.* ALMY.

Under Gen. Laws, *c.* 282, *s.* 3, providing that "If any person shall plead guilty to an indictment for murder, the court having cognizance of the offence shall determine the degree," the proceeding by the court for the determination of the degree is not such a trial as the common law or the constitution requires to be had by jury.

One who has pleaded guilty to an indictment for murder, upon which a conviction either in the first or in the second degree is warranted, has 'no constitutional right to a trial by jury to determine the degree. The statute authorizing the determination by the court is constitutional.

INDICTMENT, for murder. The defendant pleaded guilty, and the question of degree was determined by the court in pursuance of Gen. Laws, *c.* 282, *s.* 3. Murder was admitted. The only question was whether it was of the first or the second degree; and it was found to be of the first degree. After judgment the defendant objected, and moved for a new trial, on the ground that the determination of the degree by the court was legal error because his right to have the question of degree tried by jury cannot be waived, and that the statute is unconstitutional.

*Edwin G. Eastman*, attorney-general, and *William H. Mitchell*, solicitor, for the state.

*Alvin Burleigh* and *Joseph C. Story*, for the defendant.

BLODGETT, J. In criminal proceedings, a confession of the offence by the party charged by a plea of guilty is the highest kind of conviction of which the case admits (2 Hawk. P. C., *c.* 31, *s.* 1; 2 Hale P. C. 225; 4 Bl. Com. 362), and subjects him to precisely the same punishment as if he were tried and found guilty by verdict. 1 Arch. Cr. Prac. and Pl. 110. And the effect of a confession being to supply the want of evidence (*Rex v. Hall*, 1 T. R. 320), it is an admission of every material fact well pleaded in the indictment, and authorizes the court having jurisdiction of the offence to proceed to judgment. 4 Bl. Com. 329; 1 Ch. Cr. Law 429; 1 Bish. Cr. Proc. 795.

"Of judgments . . . . in criminal cases there are two kinds:

First, such as are fixed and stated, and always the same for the same species of crime. Secondly, such as are discretionary and variable, according to the different circumstances of each case. . . . The judgment against a man or woman for felony of death hath always been the same since the reign of Hen. I, viz.: That he or she be hanged by the neck till dead. . . . As to judgments . . . which are discretionary and variable according to different circumstances, I shall observe in general that for crimes of an infamous nature . . . it seems to be in great measure left to the prudence of the court to inflict such corporal punishment, and also such fine and lien to the good behavior for a certain time, etc., as shall seem most proper and adequate to the offence, from the consideration of the baseness, enormity and dangerous tendency of it, the malice, deliberation and wilfulness, or the inconsideration, suddenness and surprise with which it was committed, the age . . . of the offender, and all other circumstances which may any way aggravate or extenuate the guilt." 2 Hawk. P. C., ss. 1, 7, 19.

Prior to 1837 degrees of murder were unknown in this state, and upon conviction the invariable judgment was death. In that year, by the legislative act of January 13, which has since been in force, the crime of murder was divided into two degrees, and transferred from the first class of crimes, in which the judgment is invariable, to the second class, in which the judgment is variable. It was recognized as a crime of different grades of enormity deserving different penalties, and so the punishment was made more or less severe according to certain aggravating or extenuating circumstances. (See note, 19 Conn. 391.) But the act did not create any new offence, or change the definition of murder as it was understood at common law : it merely mitigated the punishment in certain cases not of the most aggravated nature : and hence an indictment alleging murder in the same form as at common law will support a verdict of guilty of murder in the first degree under the act. *Commonwealth* v. *Desmarteau*, 16 Gray 1 ; *State* v. *Pike*, 49 N. H. 399, 405, and authorities cited; *Craig* v. *State*, 49 Ohio St. 415. Such an indictment "sets forth . . . the highest grade of homicide—murder in the first degree—and thereby includes the inferior grade of murder in the second degree, in like manner as an indictment for murder at common law embraces a charge of manslaughter, which is comprehended in the allegations necessary to charge the higher offence. The only difference in the two cases is, that in the latter the indictment charges two distinct offences, but in the former, as applied to degrees of murder, only one offence is charged, but in such form that it includes the higher as well as the lower grade to which different punishments are attached." *Green* v. *Com.*, 12 Allen 155, 172.

Neither did the act make any change in the effect of a plea of

guilty. It still confesses everything that is duly set forth, as a plea of not guilty puts in issue every fact which is comprehended within the averments of the indictment. When, therefore, this defendant pleaded guilty to the indictment charging upon him, in common-law form, killing with deliberate and premeditated malice, his plea was a confession that he was guilty of the common-law crime of murder which the statute has not altered, and but for which a judgment of death would have been imperatively required; for, while the statute in no way detracts from the force or effect of the plea, it makes it the duty of the court to ascertain before judgment whether the extreme sentence which would otherwise follow the plea is warranted by the facts. "If any person shall plead guilty to an indictment for murder hereafter committed, the justices of the court having cognizance of the indictment shall determine the degree."

For this purpose an inquiry into the circumstances of the defendant's crime was necessary, tending to show the higher or lower degree of enormity which the law recognizes, as it is necessary when a defendant pleads guilty to an indictment for burglary under Pub. St., c. 276, s. 1. He is to be imprisoned "not exceeding twenty-five years;" but the court has no means of knowing whether the penalty should be twenty-five or ten years, or the lowest possible limit of a year and a day, unless some information is given on the subject at a hearing on the degree of enormity. But nobody, it is believed, ever supposed that such a defendant has a constitutional right to a jury trial of this question. It is not an issue in any legal sense. And nobody, it is believed, ever supposed that the accused has a constitutional right to a jury trial to determine whether he shall be fined, or imprisoned, or ordered to recognize to keep the peace (c. 278, s. 20), in a case of assault, or be fined and imprisoned in the county jail, or sent to the state prison (c. 272, s. 1), for adultery. And certainly the generation which made and adopted the constitution did not understand that the kinds or amounts of punishment to be imposed by variable judgments are issues triable by jury; for the act of February 8, 1791, "for the punishment of certain crimes," provided that a person convicted of one crime should be fined or set on the gallows, and might be imprisoned; that for another offence, the convict should be set on the gallows one hour with a rope about his neck and one end thereof cast over the gallows, and imprisoned, bound to good behavior, and fined, and the court should order the person convicted to suffer all or part of the foregoing punishments according to the circumstances and aggravations of the offence. For another offence, the convict was to be set in the pillory, whipped, imprisoned, bound to good behavior, or fined, or suffer any or all the foregoing punishments, according to the nature and aggravation of the offence; for another, the penalty was fine, imprisonment, or whipping, as the court, considering the

nature and aggravation of the offence, may order; for another, sitting in the pillory, imprisonment, and fine, or any or all of these punishments, according to the nature and aggravation of the offence. See, also, Prov. Laws, *ed.* 1761, *pp.* 11–14. "We regard it as a well settled and unquestioned rule of construction that the language used by the legislature in the statutes enacted by them, and that used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time the constitution and laws were adopted." *Opinion of the Justices,* 41 N. H. 550. If a recorded confession of every material averment of an indictment puts the confessor upon the country, the institution of jury trial, and the legal nature and effect of a plea of guilty, have been very imperfectly understood, not only by the authors of the constitution and their successors down to the present time, but also by all the generations of men who have lived under the common law.

The necessary statutory inquiry into the circumstances of the defendant's crime has been made. His plea has been found to be warranted by the facts, and judgment has followed accordingly. In ascertaining the degree of his crime, he has been fully heard by himself, his witnesses, and counsel. Every facility has been provided him at the public expense to present before an impartial tribunal all the facts or circumstances tending in any way to mitigate or extenuate his guilt. No want of competent intelligence to make the plea is averred, and no mistake or misapprehension as to its effect is alleged. No evidence against him is claimed to have been improperly admitted, and no evidence in his favor is claimed to have been improperly rejected. His sole complaint is, that he has had no trial in the constitutional sense of the word.

But his plea precluded such a trial. "The proceeding . . . to determine the degree of the crime of murder after a plea of guilty is not a trial, nor has the defendant any right to have that question determined by a jury." *People* v. *Noll,* 20 Cal. 164. The only question remaining was, whether there were extenuating circumstances affecting his punishment; and mitigation of punishment on a plea of guilty is not made a question for the jury by the common law, or the statute, or the constitution. *Opinion of the Justices,* 9 Allen 586. When a prisoner on his arraignment hath pleaded not guilty, and for his trial hath put himself upon the country, which country the jury are, a jury is impanelled. 3 Bl. Com. 330, 352; 4 Bl. Com. 350; 1 Arch. Cr. Prac. & Pl. 110. And while in some states the common law has been so altered as to confer on the jury who try the general issue of guilt the power of deciding what punishment shall be imposed by a variable judgment, as well as the power of deciding the issue, and while an innovation of this kind was introduced in this state by the provision of the act of 1837, that "Every jury who shall find any per-

son guilty of murder hereafter committed, shall also find by their verdict whether it is of the first or second degree," it has not been enacted that there shall be a trial by jury to determine the punishment when there is no issue and no denial of any allegation of the indictment, but a general unqualified confession of guilt by a plea of guilty. *People* v. *Noll, supra.*

Nor does the constitution confer any such right. "Trial by jury," in *art.* 16 of the Bill of Rights, is common-law language used in its common-law sense. It means trial by twelve men, who return their unanimous verdict "upon the issue submitted to them." But while the right of every one to have his cause tried, or to be tried himself if accused of crime, by a jury, is guaranteed and established beyond the power of the legislature to abridge it, the constitution does not compel any one to exercise the right thus secured; and there is no reason whatever to suppose that its makers designed to repeal or alter the moss-grown rule of the common law, "by which a party indicted for an offence, however grave in its nature, may enter a plea of guilty thereto, if he sees fit so to do," or the other no less well established rule, that "in such a case there is no issue to be submitted to a jury on which a verdict can be founded." "The trial by jury, secured to the subject by the constitution, is a trial according to the course of the common law, and the same in substance as that which was in use when the constitution was formed." *East Kingston* v. *Towle,* 48 N. H. 57, 64.

The constitutional rights of the defendant have not been hampered, or in any way abridged. The right of trial by jury remained to him after the act of 1837, the same as before. The act is not only in perfect harmony with the constitution in this respect, but by mitigating the punishment for murder in cases not of the most aggravated nature, and by giving an additional tribunal for the ascertainment of the degree, it manifestly conferred a benefit upon the defendant instead of depriving him of a right. By pleading guilty he voluntarily relinquished his constitutional right of trial by jury, as he would by pleading guilty to an indictment for larceny, arson, or any other crime. It was entirely for him to say whether there should be an issue and a trial, or not. He knew there would be a trial if he pleaded the general issue, and he also knew that the prosecution would not accept a plea of guilty of murder in the second degree. He preferred to have no issue and no trial, but to have a hearing under the statute in regard to the circumstances of the admitted murder, which he claimed would affect the penalty for the single and undivided crime of which he chose to be convicted on his confession.

This he might lawfully do. "The legislature have the general power to constitute new tribunals, and to provide new modes of trial for future cases, provided the right to a trial by jury, such as the constitution intends, is secured to every one in the last resort,

in every case where it is guaranteed by the constitution." *Opinion of the Justices*, 41 N. H. 552. "The supreme legislative power within this state shall be vested in the senate and house of representatives . . . and shall be styled The General Court." Constitution, *arts.* 2, 3. "The general court shall forever have full power and authority to erect and constitute judicatories and courts of record or other courts, to be holden in the name of the state, for the hearing, trying, and determining all manner of crimes, offences, pleas, processes, plaints, actions, causes, matters and things whatsoever, arising or happening within this state, or between or concerning persons inhabiting or residing or brought within the same, whether the same be criminal or civil, or whether the crimes be capital or not capital, and the said pleas be real, personal, or mixed, and for the awarding and issuing execution thereon." *Id., art.* 4. And by *art.* 5, "full power and authority are hereby given and granted to said general court from time to time to make, ordain, and establish all manner of wholesome and reasonable orders, laws, statutes . . . so as the same be not repugnant to this constitution, as they may judge for the benefit and welfare of this state, and for the governing and ordering thereof and of the subjects of the same." These broad provisions are, for the purposes of this inquiry, restricted only by the declarations of the Bill of Rights, intended for the better security of persons accused of crimes against arbitrary and hasty public prosecutions, that "no subject shall be arrested, imprisoned, despoiled or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land . . . ." and that the legislature shall not "make any law that shall subject any person to a capital punishment . . . without trial by jury." *Arts.* 15, 16.

It is only necessary, therefore, in order to determine whether the legislature transcended its power in the act of 1837, to inquire whether it is prohibited by the constitution. As we have already seen, the right of the accused to a jury trial was not affected, and we can therefore have no doubt that the proceeding (whether it possesses the essential attributes of a trial in the common sense of the word or not) required by the act to ascertain the degree of the crime where, in an indictment for murder, the defendant enters a plea of guilty, is constitutional and valid. Statutes of like or similar import have been enacted in many of the states, and have never been held to be unconstitutional; on the other hand, they have been repeatedly and uniformly held to be constitutional. *Craig* v. *State, supra; State* v. *White*, 33 La. Ann. 1218; *State* v. *Askins, id.* 1253; *People* v. *Noll, supra; People* v. *Lennox*, 67 Cal. 113; *State* v. *Worden*, 46 Conn. 349—33 Am. Rep. 27; *In re Staff*, 63 Wis. 285—53 Am. Rep. 285; *Dailey* v. *State*, 4 Ohio St. 57; *Jones* v. *Com.*, 75 Pa. St. 403;—and see *State* v. *Kauf*

*man*, 51 Iowa 578—33 Am. Rep. 148; *State* v. *Sackett*, 39 Minn. 69; *Darst* v. *People*, 51 Ill. 286; *League* v. *State*, 36 Md. 257; *State* v. *Moody*, 24 Mo. 560; *Ward* v. *People*, 30 Mich. 116; *Sarah* v. *State*, 28 Ga. 576; *Harris* v. *People*, 128 Ill. 585—15 Am. St. Rep. 153. Irrespective of the statute, however, the defendant's conviction must be held to have been according to "the law of the land." The right of the accused to plead guilty upon his arraignment has been universally recognized from the earliest period in the history of criminal procedure, and from the same period the universally recognized effect of the plea has been to authorize the court having cognizance of the offence to proceed to judgment.

And if, contrary alike to the express and unambiguous language of the statute and every known rule of construction, it were held that the defendant had a constitutional right of trial by jury on his plea of guilty, he waived the right by voluntarily submitting to the tribunal having jurisdiction of the offence the determination of the degree of his guilt, and must abide the consequences. "A party may waive a constitutional as well as a statute provision made for his benefit." *Lee* v. *Tillotson*, 24 Wend. 337—35 Am. Dec. 624, 626, and *note*. "In our Bill of Rights, jury trial is a liberty reserved by the people, and excepted out of their grant of governmental powers. . . . It is a private right of the subject, and not a public right of the state" (*Wooster* v. *Plymouth*, 62 N. H. 193, 196); and it has always been so understood here. *Dart. Coll.* v. *Woodward*, 1 N. H. 111, 129; *State* v. *Albee*, 61 N. H. 423, 427–429. It is one of the rights not surrendered by the people when they formed themselves into a state, and by its reservation they exempted themselves from the authority of the government they created to abridge it. The purpose was to secure to suitors and persons accused of crime, as individuals, the right and privilege of having their causes heard and determined by a jury, "as a protection of the subject against the government, and of the weak subject against the powerful subject. . . . It is a security, not for the sovereignty, the independence, or the public property of the state, but for private life, private liberty, and private property against all power, public and private." *Wooster* v. *Plymouth*, *supra*, 201. The prohibition, in *art.* 16 of the Bill of Rights, of "any law that shall subject any person to capital punishment . . . without a trial by jury," must therefore be interpreted as a protection of the accused and a security for his exclusive benefit, and as such he may avail himself of it, or waive it, at his own election. *Jones* v. *Robbins*, 8 Gray 329, 339, 341. And we fail to find in that article, or in any other provision of the constitution, any language which precludes or denies to the accused the power or option to waive a jury without authority of statute. But this question is not presented by the case, and consequently will not be discussed. It is enough that the legislature,

in the exercise of the power with which it is invested by the constitution, has provided, at the option of the accused, a mode of trial in capital cases without the intervention of the jury, and that the defendant has availed himself of the option.

While the defendant's objection was too late and gives him no rightful standing here (*State* v. *Sawtelle*, 66 N. H. 488, 503, *Alexander* v. *United States*, 138 U. S. 353), his case has nevertheless been considered as if the objection had been seasonably made, and we are constrained to hold, without doubt or difference of opinion, that the judgment against the defendant was and is in all respects legal and valid.

*Motion for a new trial denied.*

DOE, C. J., and ALLEN, J., did not sit.