Hillsborough, ⎱
Oct. 5, 1915. ⎰

## STATE *v.* OSCAR J. COMERY.

Where a respondent pleads guilty of murder in the first degree and moves that a sentence of imprisonment for life be imposed, it is the duty of the court, upon the state's motion, to order the impaneling of a jury to determine the question of punishment, and to pronounce sentence of death if that penalty is decreed by the verdict.

Under chapter 114, Laws of 1903, murder in the first degree is punishable by death only when the jury so decree, but the form in which that finding is stated is not material; and no substantial right of the accused is infringed if a change in the mode of expression, designed for cases in which there is a trial of the question of guilt, is rendered necessary by his waiver of that right.

One who positively and unqualifiedly declares his inability to render a verdict which would involve the imposition of capital punishment should not be permitted to serve upon a jury whose duty it may be to determine the penalty for murder in the first degree.

In such case, whether a disqualifying opposition to the death penalty in fact exists is a question to be determined by the trial court; and the emphatic declaration of a juror that he is opposed to capital punishment "in any case" is sufficient to warrant a finding of his unfitness.

Where the undisputed evidence upon a trial for murder discloses the deliberate poisoning of a wife under circumstances of exceptional atrocity, an argument for the state which likens the respondent to a beast of prey, and urges his execution for the protection of society against him and his possible progeny, is not objectionable on the ground that it tends "to arouse bitterness of feeling and engender prejudice in the minds of the jury."

INDICTMENT, for murder by poisoning. After the general panel of jurors were present in court, the defendant retracted his plea of not guilty, pleaded guilty to murder in the first degree, and moved that a sentence of life imprisonment be forthwith imposed. Thereupon the state moved that a jury be drawn to pass upon the question of punishment. Subject to exception, the defendant's motion was denied and the state's motion was granted.

In the examination of jurors, the state was permitted to ask the following question, subject to exception: "Are you conscious of any sentimental prejudice against the infliction of capital punishment, if you should think the evidence warranted it?" Several jurors who expressed themselves as opposed to capital punishment were excused by the court, subject to exception, and there were also exceptions to portions of the closing argument for the state.

The jury having returned a verdict that the defendant be punished by death, he was sentenced to be hanged; and a bill of exceptions filed in his behalf was allowed by *Kivel* and *Branch,* JJ., at the January term, 1915, of the superior court.

*James P. Tuttle,* attorney-general, and *John R. Spring,* solicitor (*Mr. Spring* orally), for the state.

*Thorp & Abbott* and *Oscar F. Moreau* (*Mr. Abbott* orally), for the defendant.

PEASLEE, J. The defendant, having pleaded that he was guilty of murder in the first degree, now claims that this admission on his part took from the state all power to impose upon him the extreme penalty provided by law for the crime he committed. Prior to 1903, the punishment for murder in the first degree was death. P. S., c. 278, s. 5. In that year the statute was changed so as to read as

follows: "The punishment of murder in the first degree shall be death or imprisonment for life as the jury may determine. . . . If the jury shall find the respondent guilty of murder in the first degree, the punishment shall be life imprisonment unless the jury shall add to their verdict the words, with capital punishment." Laws 1903, *c.* 114, *s.* 1.

. It is manifest that if this claim of the defendant is sound, the act of 1903 is in conflict with the constitution. The claim is that the defendant who pleads guilty thereby escapes all possibility of the death penalty, while he who insists upon a jury trial upon the issue of his guilt may be sentenced to death. Neither argument nor the citation of authority is necessary to support the conclusion that no such burden can be placed upon the right of the accused to a jury trial. If it were true, as the defendant contends, that such was the legislative intent, it would follow that the act of 1903 is void, and that upon his plea of guilty of murder in the first degree the court should have sentenced him to death, as provided by the statute theretofore in force. P. S., *c.* 278, *s.* 5.

But the act of 1903 is not to be so construed. Its meaning plainly is that the assessment of the penalty for murder in the first degree has been placed in the hands of the jury. It is not contended that such a provision would be beyond the power of the legislature, but merely that it has not been so provided. It is argued that the provision of other statutes (Laws 1901, *c.* 104, *s.* 2; Laws 1909, *c.* 1), that upon a plea of guilty the court "may award sentence against him according to law," and "if he do not plead guilty, the court may assign him counsel and take all other measures preparatory to a trial," precludes all idea of a trial upon a plea of guilty. But if the plea be merely guilty, without specification of degree, a trial before the court must be had upon the question of degree. P. S., *c.* 278, *s.* 3. This involves calling witnesses, the argument of counsel, and in general all the incidents of a trial. So far as this question is concerned, the acts of 1901 and 1909 are identical with Public Statutes, chapter 254, section 2. When the earlier statute was in force, there was apparently no thought that it precluded a trial of the question of degree upon a plea of guilty. *State* v. *Almy*, 67 N. H. 274. The provision, that upon a plea of guilty the court may award sentence according to law, was evidently thought to mean that it was the duty of the court to take such steps as were necessary under the law to fix the punishment which should be imposed.

The provision, that upon a denial of guilt counsel might be as-

signed and steps preparatory to a trial taken, was not deemed to deprive the court of the power to proceed with a trial upon the question of degree, after a general admission of guilt. Of the soundness of this conclusion there is no substantial doubt. That such had been the procedure under the older statute must have been well known to the legislatures of 1901 and 1909. If there had been an intent to alter the practice or abridge the power of the court, the language of the statute would have been changed so as to express such purpose.

Nor has the defendant reason to complain because there was no technical common-law issue tried or triable by the jury in this case. He could have had such a trial had he desired it. But, upon the advice of competent counsel, he chose rather to waive that right by his plea of guilty. "It was entirely for him to say whether there should be an issue and a trial, or not. He knew there would be a trial if he pleaded the general issue, and he also knew that the state would not accept a plea of guilty of murder in the second degree. He preferred to have no issue and no trial, but to have a hearing under the statute in regard to the circumstances of the admitted murder. . . . As we have already seen, the right of the accused to a jury trial was not affected, and we can therefore have no doubt that the proceeding (whether it possesses the essential attributes of a trial in the common sense of the word or not) required by the act to ascertain the degree of the crime where, in an indictment for murder, the defendant enters a plea of guilty, is constitutional and valid." *State* v. *Almy,* 67 N. H. 274, 278, 279.

The same line of reasoning answers the contention that the defendant is put at a disadvantage when only the question of punishment is tried. Such advantage as might have lain in a trial of both guilt and punishment was his under the law, but he chose to relinquish it and cannot now complain of the result.

It is further urged that in a case like this the proper procedure is to reject the plea of guilty and try the case as upon a plea of not guilty. This is equivalent to saying that the statute has made it impossible for the defendant to concede facts or issues in this class of cases. The law has always been otherwise (*State* v. *Almy, supra,* 277), and it is not to be presumed that so radical and useless a change was intended by the lawmaking power.

If such procedure had been undertaken, the plea of guilty, offered and rejected, would have been competent evidence and would have effectively disposed of the feigned issue it is now said should have

been tried.   Such a procceeding would serve no useful purpose; yet it is claimed to be necessary because of the peculiar wording of one clause of the statute, which is "unless the jury shall add to their verdict the words, with capital punishment." The substance of this enactment is that there is now no capital punishment for murder in this state unless a jury so decrees.   The form in which that decree is stated is not material.   The theory that the technicality which has been eradicated from procedure in civil causes still prevails in prosecutions for crimes was long ago abandoned in this state.   "The compassion excited by the severity of English statutes is enough to account for the strictness of some of the exceptions of criminal pleading and evidence which have been allowed to outlive the cause and reason of their existence.   .   .   .   They are, in this state, at the present time, as much out of place as that British mode of conveying traitors to the gallows." *Darling* v. *Westmoreland*, 52 N. H. 401, 407, 408.

It was the defendant's right to have a verdict of the jury to which the words "with capital punishment" could have been added.   He waived that right and cannot now complain because the mere form of the finding on the question of punishment was so changed as to be appropriate to the situation created by his plea of guilty.   His plea precluded the trial he now claims he should have had.   *State* v. *Almy, supra*, 277.   It is evident that the procedure adopted at the trial in no way infringed any substantial right of the accused, and that is the test of its legality in this case as it would be in a civil suit.

But more than this, the clause in question is not the only provision on the subject.   The section of the statute begins with this positive statement:   "The punishment of murder in the first degree shall be death or imprisonment for life as the jury may determine." This declaration is all that is needed to authorize the court to proceed with a jury upon this question.   The later provision, as to the form of the verdict, is in terms limited to cases where the jury pass upon the issue of guilt, and has no application to a case like the one at bar where guilt is admitted.

It is also argued that the jury trial is the right of the accused and not of the state, and that if he does not desire a jury trial one cannot be had.   If it be conceded that this is sound law, it does not alter the situation.   If in addition to his plea of guilty of murder in the first degree he had added his assent that a sentence of death be imposed upon him, his waiver would have been complete and no

trial of any sort would have been necessary. But since he maintained that no such sentence should be imposed, he in effect pleaded not guilty to the extent indicated; and that, under the statute and his general plea of guilt, put the parties to a jury trial. But this was because the defendant insisted upon it, not because the state maintained that it was entitled to a jury trial in the face of his willingness to submit to the sentence.

2. Subject to exception, several jurors were excused by the court because they stated, in substance, that they could not return a verdict which would involve the imposition of capital punishment. It is argued that it was the defendant's right to have such men sit upon the jury if they chanced to be drawn; that the imposition of the death penalty is now optional with the jury, and therefore those who would not impose it in any case are impartial jurors within the meaning of the law. The argument involves a misconception of what the law is. The legislative question, whether capital punishment shall be abolished, has not been transferred from the lawmakers to the jury. The law still is that the death penalty shall be imposed if the crime be of such a character as to demand it. Upon this issue, the state as well as the accused is entitled to the exercise of the judgment of the jury. A juror who declares that he cannot exercise judgment upon that question is not indifferent and should not be permitted to serve. Instead of going to the jury-room prepared to weigh the evidence and consider argument, he would go with a mind fully made up without regard to what had been put before him during the trial. "No case of unfitness can be more clear than one where the juror holds such opinions, or has such conscientious scruples, that, acting upon those opinions or scruples, he cannot and will not execute the laws of the land, so far as they depend upon the action of the jury." *Pierce* v. *State*, 13 N. H. 536, 555, 556.

Conscientious scruples which would cause the juror to hesitate to impose the death penalty might not disqualify him, if he still declared that he could and would observe the law. An opinion that capital punishment ought to be abolished might not be cause for excusing the juror who was prepared to enforce the law, although he did not believe in it. But when these limits are passed, and the juror declares his inability to act as the law requires—that is, to exercise some judgment upon the matter to be tried—then he is plainly disqualified.

It was the duty of the court to inquire as to the state of the jurors'

minds upon this subject and to excuse such of them as were found to have their minds closed to the matter to be tried. It was not necessary that the answers of the jurors should in every instance demonstrate such mental state beyond all doubt. It was the province of the court to find from the evidence whether the fixed determination in fact existed. *March* v. *Railroad*, 19 N. H. 372. "Their decision stands like the verdict of a jury, to be reversed only when it is manifestly against law and evidence." *State* v. *Pike*, 49 N. H. 399, 407; *State* v. *Jones*, 50 N. H. 369, 381; *State* v. *Sawtelle*, 66 N. H. 488. It is not urged in argument that the evidence did not warrant the finding necessary to the legal conclusion that the jurors should be excused. The contention is that the conclusion of law was unsound. So far as the exception rests upon the grounds which have been argued, it is overruled.

But the exception may be said to fairly present the question of the sufficiency of the evidence, and this matter has been considered, although it was not urged by counsel. An examination of the testimony of the eight jurors who were excused for this cause shows that most of them stated in terms that they could not return a verdict for capital punishment in any case. The others stated and reiterated their opposition to capital punishment "in any case" in so positive a form as to warrant a finding that they had a fixed determination touching the matter to be tried. There was no request that these jurors be further interrogated to determine whether, notwithstanding their views, they thought they could still weigh the evidence and pass judgment upon it. Their statements were positive and emphatic, without qualification or suggestion that the jurors could render a verdict for capital punishment in any possible case. It is entirely clear that a finding upon such evidence that a juror was not indifferent cannot be reversed here. This conclusion renders it unnecessary to decide whether the triers of a juror's indifferency might not find him disqualified solely because of his opinion upon the question of capital punishment, even when he declared his ability and purpose to pass an unbiased judgment upon the case presented at the trial.

The exceptions to questions calculated to ascertain the state of the jurors' minds upon the question of capital punishment are disposed of by what has been said upon the matter of disqualification. The subject was one to be tried out by the court, as the triers of the jurors' indifferency, and the testimony of the jurors themselves was admissible evidence.

3. Exceptions were also taken to the closing argument for the state. The first is to a statement that the defendant's counsel sought to challenge the jurors' courage. An examination of the record of the trial shows that the statement had abundant basis in fact; and unless the purpose and scope of argument has been entirely misunderstood, it could not be expected that such a challenge would be allowed to go unanswered.

The other exception relates to the part of the argument wherein the defendant was likened to vermin and beasts of prey, and it was urged that he should be executed for the protection of society from himself and his possible progeny. The limitations upon the rights and duties of counsel in argument to the jury have been often discussed in this state and are well understood. Unless there be a misstatement of fact or of law, the matter is not reviewable in this court. *Piper* v. *Railroad*, 75 N. H. 228, 234. No claim of transgression in either respect is made in the present instance. The position taken is that the argument tended "to arouse bitterness of feeling and engender prejudice in the minds of the jury." If this were a sufficient reason for disturbing a verdict for error in law, it would open a broad and indefinite field, and would present questions that could not be satisfactorily dealt with by those who were not present at the trial. "In no case has a verdict been set aside when the remarks of counsel were founded on evidence which related to a material issue, no matter what the form of the statement, how forcibly it was put, or how much it tended to prejudice the jury in favor of his client." *Story* v. *Railroad*, 70 N. H. 364, 387. The undisputed evidence showed that the defendant's wife was a reputable, hard-working woman; that the defendant had been guilty of adultery with a young girl, who was pregnant by him; that he administered the poison to his wife, and sat by and watched its effect upon her until certain she was beyond help, when he called in the neighbors, stating that his wife was sick; and that he had shown no repentance for what he had done. If language can be too severe or comparison too striking to characterize such a crime, neither was employed by the attorney-general in this instance.

*Exceptions overruled.*

All concurred.