THE STATE OF NEW HAMPSHIRE

v.

KENNETH JOHNSON & a.

July 31, 1991

*John P. Arnold,* attorney general (*Michael D. Ramsdell,* assistant attorney general, and *Mark E. Howard,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, and *Bjorn Lange,* New Hampshire Public Defender Program, of Concord, by brief, and *Mr. Duggan* orally, for defendant Kenneth Johnson.

*Twomey & Sisti Law Offices,* of Portsmouth (*Alan J. Cronheim* on the brief and orally), for the defendant Anthony Pfaff.

*Kinghorn & Maynard P.A.,* of Nashua (*Clifford R. Kinghorn, Jr.,* and *Steven L. Maynard* on the brief, and *Mr. Maynard* orally), for defendant Jason Carroll.

THAYER, J. In this interlocutory appeal by the State, *see* RSA 606:10, II(d), we are asked to determine the applicability of New Hampshire's capital punishment statutes, RSA 630:5 (Supp. 1990) (effective until Jan. 1, 1991) (hereinafter referred to as "former RSA 630:5") and RSA 630:5 (Supp. 1990) (revised effective Jan. 1, 1991) (hereinafter referred to as "current RSA 630:5"), to the defendants, Kenneth Johnson, Anthony Pfaff, and Jason Carroll.

On January 23, 1990, the defendants were indicted on charges, *inter alia,* of capital murder, RSA 630:1, I(c) (Supp. 1990), for their

alleged involvement in the death of Sharon Johnson, the wife of defendant Kenneth Johnson. Pursuant to the defendants' motions, and prior to trial, the Superior Court (*Murphy,* J.) ruled: (1) that retroactive application of current RSA 630:5 would violate the State constitutional prohibition against retrospective laws, *see* N.H. CONST. pt. I, art. 23; (2) that retroactive application of current RSA 630:5 would also be contrary to the legislature's intent and hence unlawful; and (3) that enforcement of the capital punishment procedures under former RSA 630:5 against the defendants would violate the defendants' constitutional rights to trial by jury, to equal protection under the law and to due process. The State now appeals from these rulings, and we affirm.

The New Hampshire Legislature has provided that "[a] person convicted of a capital murder may be punished by death." RSA 630:1, III. As of January 1, 1991, whenever the State intends to seek the death penalty against a person facing a capital murder charge, it must initiate the detailed procedures set out in current RSA 630:5. This provision represents an extensive revision of the less detailed procedures found in former RSA 630:5, which were in effect when the defendants were indicted. In this appeal, we are not asked to address the broad question of the death penalty's constitutionality, but rather, assuming its validity, whether the revised procedures under current RSA 630:5 are enforceable against these particular defendants. In response to the State's assertion that these revisions should apply in this case, the defendants argue that such an application would be retrospective and thus contrary to the legislature's intent and to the New Hampshire and Federal Constitutions, *see* N.H. CONST. pt. I, art. 23; U.S. CONST. art. I, § 10. "It is unnecessary for us to address [the] constitutional argument[s] because rules of statutory construction require [current RSA 630:5] to apply prospectively only." *LaBarre v. Daneault,* 123 N.H. 267, 271, 461 A.2d 89, 92 (1983).

 Except for its effective date of January 1, 1991, current RSA 630:5 is silent as to whether it should apply prospectively or retrospectively. The general rule that statutes are only to be applied prospectively, *State v. Theodosopoulos,* 123 N.H. 287, 289, 461 A.2d 100, 102 (1983); *Mihoy v. Proulx,* 113 N.H. 698, 700–01, 313 A.2d 723, 725 (1973), is further buttressed by a presumption against retrospective application when the statute affects a party's substantive rights, *Norton v. Patten,* 125 N.H. 413, 417, 480 A.2d 190, 193 (1984). This presumption, however, reverses when the statute is determined to

affect only procedural or remedial rights of a party. *Id.*; *see also La-Barre*, 123 N.H. at 271–72, 461 A.2d at 92. Thus, our inquiry turns to the question of whether current RSA 630:5 affects substantive or, rather, procedural rights of the defendants.

Under former RSA 630:5, upon the jury's determination of the defendant's guilt, the judge would proceed to the sentencing phase of the trial. RSA 630:5, II. It was during this phase that the jury was asked to determine whether the defendant should be sentenced to death. *Id.* at IV. Although the State was given broad latitude to introduce any evidence relevant to sentencing, *id.* at II, a defendant could not be sentenced to death without a unanimous finding by the jury that at least one of seven statutory aggravators was present. *Id.* at II(a), IV.

The same basic principles also apply under current RSA 630:5. The jury must still unanimously find statutory aggravators in order to sentence a defendant to death, but now at least *two* statutory aggravators must be found, and they must be weighed against any mitigating factors which may exist. *Id.* at IV. The current statute also requires the State to prove the statutory aggravators to the jury beyond a reasonable doubt. *Id.* at III.

Despite these increased burdens for the State, however, application of current RSA 630:5 adversely affects the defendants' rights in one significant and substantive way. Now, if the jury finds either that the offense occurred "after substantial planning and premeditation," *see* current RSA 630:5, VII(f), or that "[t]he victim was particularly vulnerable," *see id.* at VII(g), it may rely on these statutory aggravators in recommending that the defendants be sentenced to death. Under former RSA 630:5, these statutory aggravators were not available as a basis for recommending the death sentence. *Compare* former RSA 630:5, II(a) *with* current RSA 630:5, VII(f), (g). Because current RSA 630:5 provides two new statutory grounds upon which the State may seek the death penalty, there is a possibility that the defendants may now face capital punishment because of circumstances which could not have served as the statutory basis for such a penalty under former RSA 630:5. Such a possibility increases the likelihood of imposition of the death penalty and can hardly be considered procedural or remedial in its impact on the defendants.

■■ Faced with a statute that contains no expression of the legislature's intent that it be applied retrospectively and that also has an adverse and substantial impact on the rights of the defendants, we agree with the superior court's conclusion that "the legislature

did not intend [that current RSA 630:5] apply to incidents occurring prior to its effective date." Thus, the State's argument for retroactive application of current RSA 630:5 fails. In view of our holding, the parties' constitutional issues pertaining to the retrospective application of current RSA 630:5 are rendered moot. *See LaBarre*, 123 N.H. at 271, 461 A.2d at 92.

As it did before the superior court, the State also argues that, absent the applicability of current RSA 630:5, the defendants are subject to former RSA 630:5, which sets forth the capital punishment procedures existing at the time the alleged murder occurred. In pertinent part, this statute provides:

"I. At the conclusion of all cases of capital murder and after argument of counsel and proper charge from the court, the jury shall retire to consider a verdict of guilty or not guilty without consideration of punishment.

II. If the jury returns a verdict of guilty, the court shall resume the trial and conduct a pre-sentence hearing before the jury at which time the only issue shall be the determination of punishment to be imposed, at which evidence may be presented as to any matter that the court deems relevant to sentence, including the following aggravating or mitigating circumstances: . . ."

Former RSA 630:5.

The trial court disagreed with the State and ruled that, based on the above language, the statutory capital punishment procedures do not apply in cases where defendants plead guilty to capital murder, thus removing the threat of the death penalty upon a guilty plea. Under this interpretation of the statute, the defendants face the dilemma of choosing between waiving their constitutional right to a jury trial by pleading guilty, thereby subjecting themselves to a maximum punishment of life imprisonment, or asserting their right to a trial, whereupon, if found guilty, they could be subject to a maximum punishment of death. According to the trial court, such a choice violates the defendants' constitutional rights to due process and equal protection.

On appeal, the State asserts that the trial court's interpretation of the statute is in error. According to the State, the statute applies to all defendants, regardless of whether they plead guilty or are found guilty by a jury, and, thus, there is no constitutional violation. In reaching this conclusion, the State maintains that former RSA 630:5 is ambiguous, and, therefore, we should examine the pertinent case

law and legislative history in order to determine the legislature's intent. Under the State's interpretation of former RSA 630:5, the ambiguity lies in the fact that the statute appears to exclude defendants who plead guilty to capital murder, while it requires a jury to consider a verdict in "all cases of capital murder." Former RSA 630:5, I. The State maintains that such a result could not have been intended because it contradicts prior case law. The State further maintains that this case law and the legislative history of former RSA 630:5 reveal no intention to limit the trial court's authority when a defendant admits his or her guilt. Relying on this court's decision in *State v. Comery*, 78 N.H. 6, 95 A. 670 (1915), and its own interpretation of the capital punishment statutes that preceded former RSA 630:5, the State asserts that when a defendant pleads guilty to capital murder, the trial court is empowered to impanel a jury for a determination of the defendant's sentence. We disagree.

■ It is well settled that a statute cannot permit a defendant who insists upon a jury trial and is convicted of capital murder to be sentenced to death, while allowing a defendant who pleads guilty to the same crime to escape the possibility of such a sentence. Such a selective death penalty provision needlessly chills the defendant's right to assert his or her innocence, as well as the accompanying right to a jury trial, under both our State Constitution and the Federal Constitution, *see* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI. "[N]o such burden can be placed upon the right of the accused to a jury trial." *Comery, supra* at 8, 95 A. at 671; *see also United States v. Jackson*, 390 U.S. 570, 582–83 (1968). Accordingly, "[w]here, pursuant to statutory procedure, the death penalty is imposed upon conviction following a plea of not guilty and a trial, but is not imposed when there is a plea of guilty, that statute is unconstitutional." *State v. Frampton*, 95 Wash. 2d 469, 478, 627 P.2d 922, 926 (1981). It follows, then, that our interpretation of former RSA 630:5 must focus on whether the statute provides a procedure that allows a defendant who pleads guilty, or otherwise forgoes a trial, to be given the death penalty.

■ On questions of statutory interpretation, "'this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole.'" *State Employees' Ass'n v. Cheney*, 119 N.H. 822, 826, 409 A.2d 775, 777 (1979) (quoting *City of Concord v. PELRB*, 119 N.H. 725, 727, 407 A.2d 363, 364 (1979)). We begin our examination by considering the plain meaning of the words used in the statute according to the common and approved usage of

the language. RSA 21:2; *Town of Wolfeboro v. Smith*, 131 N.H. 449, 452, 556 A.2d 755, 756 (1989). We will not place a literal interpretation on a phrase when doing so removes it from the context of the whole, *State ex rel Fortin v. Harris*, 109 N.H. 394, 395, 253 A.2d 830, 830–31 (1969), nor will we construe a statute as unconstitutional where it is susceptible of a constitutional construction, *White v. Lee*, 124 N.H. 69, 77–78, 470 A.2d 849, 854 (1983), but we will not modify the meaning of a statute that is plain on its face, *Appeal of Cremin*, 131 N.H. 480, 483, 554 A.2d 1298, 1300 (1989). Where statutory language is clear and unequivocal there is no need to examine the legislative history for further illumination as to the legislature's intent. *Chroniak v. Golden Investment Corp.*, 133 N.H. 346, 351, 577 A.2d 1209, 1213 (1990).

■ Our examination of the language of former RSA 630:5 leads us to the conclusion that the State's interpretation of the statute is erroneous. The language of former RSA 630:5 is clear and unambiguous. The statute explicitly requires a verdict of guilty by "the jury," before the superior court has the authority to proceed to the capital punishment determination by "the jury." Upon examining the plain language of former RSA 630:5, we conclude that the statute does not provide a procedure whereby a defendant who pleads guilty to capital murder can be subjected to the death penalty. As earlier indicated, such a selective capital punishment statute adversely affects the defendants' due process rights under both our State Constitution and the Federal Constitution by needlessly chilling their right to plead not guilty and to have a jury trial. *See Jackson*, 390 U.S. at 582–83; *Comery*, 78 N.H. at 8, 95 A. at 671. Consequently, we hold that former RSA 630:5 is unconstitutional on its face.

We are also precluded from accepting the State's interpretation of the statute by virtue of the language found in RSA 630:1, III. Although RSA 630:1 suggests a legislative intent to subject all persons convicted of capital murder to the death penalty, in order to implement that intention, we must look to former RSA 630:5 as the statute's procedural provision. In this provision the legislature was explicit—when "the jury" returns a verdict of guilty, the superior court shall proceed with a presentencing hearing after which "the jury shall retire to determine the punishment to be imposed." *See* former RSA 630:5, I, II, IV. Thus, any apparent ambiguity created by former RSA 630:1, III is resolved by the plain language in former RSA 630:5. We are bound by the plain language used in the statute as a whole. *See Chroniak*, 133 N.H. at 351, 577 A.2d at 1213. When a

defendant's life is measured as an appropriate punishment, a court must be particularly sensitive to insure that every safeguard is observed. *State v. Frampton*, 95 Wash. 2d at 478, 627 P.2d at 926. "There is no question that death as a punishment is unique in its severity and irrevocability." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). Accordingly, the legislature must be absolutely certain that its laws clearly implement its intention when legislating a punishment as serious as the death penalty.

The State argues, however, that a conclusion that former RSA 630:5 is unconstitutional would be contrary to this court's prior decision in *State v. Comery*, 78 N.H. 6, 95 A. 670 (1915), where the precise issue presently under consideration was addressed. In *Comery, supra* at 7–8, 95 A. at 671, this court was asked to determine the constitutionality of a 1903 capital punishment statute in light of the defendant's assertion that the statute did not apply to a defendant who pled guilty to capital murder. The statute at issue in *Comery* provided that:

> "The punishment of murder in the first degree shall be death or imprisonment for life as the jury may determine . . . . If the jury shall find the respondent guilty of murder in the first degree, the punishment shall be life imprisonment unless the jury shall add to their verdict the words, with capital punishment."

Laws 1903, 114:1. As in the case now before us, the defendant in *Comery* was prosecuted under a statute that had subsequently been amended. The 1903 statute was amended in order to include the provision, "[i]f he shall plead guilty of murder in the first degree . . . the court may submit to a jury the question of punishment" so that a defendant who pled guilty to capital murder could be sentenced to death. Laws 1915, 65:2. The defendant in *Comery*, as the defendants here on appeal, raised a variety of arguments to support his position that he "escape[d] all possibility of the death penalty" by pleading guilty. *Comery, supra* at 8, 95 A. at 671. The court, however, discounted his arguments by focusing on the section of the 1903 statute which stated that "[t]he punishment of murder in the first degree shall be death or imprisonment for life *as the jury may determine.*" *Comery, supra* at 10, 95 A. at 673 (emphasis added). According to the *Comery* court, in a plea situation "[t]his declaration is all that is needed to authorize the court to proceed with a jury upon [the question of capital punishment]." *Comery, supra* at 10, 95 A. at 673. Thus, based on the express words of the statute, the 1903 law was inter-

preted as providing the trial court with the authority to impanel a jury to determine the question of punishment, should a defendant plead guilty to capital murder. It is significant that the *Comery* court further explained that "[t]he later provision, as to the form of the verdict, is in terms limited to cases where the jury pass upon the issue of guilt, and has no application to a case like the one at bar where guilt is admitted." *Comery supra.* This provision is comparable to former RSA 630:5, II. Therefore, the statutory provision explicitly relied upon in *Comery* did not exclude a plea situation, because the statute did not require a jury verdict to be rendered in order for the defendant to be sentenced to death.

In contrast, former RSA 630:5 has no such permissive provision which can be interpreted as imposing the death sentencing procedure in plea situations. Rather, the statute considers only those cases where a jury in fact renders a verdict of guilty. Nor does any other section of former RSA chapter 630 contemplate a procedure which enables the trial court to sentence to death the defendant who admits his or her guilt. As we previously stated, it may be argued that former RSA 630:1, III, which provides that "[a] person convicted of a capital murder may be punished by death," suggests that the statute applies to all defendants, whether they are convicted by a jury or upon their own admission. However, only former RSA 630:5 provides the procedure by which the death sentence may be rendered. Unlike the 1903 statute, which provided a procedure to be used in death penalty cases, RSA 630:1 does not address the procedure to be implemented in such cases. The language in former RSA chapter 630 is exclusive; it explicitly implements the sentencing procedure only when a conviction is determined by "the jury." Courts have no right to redraft legislation to make it conform to an intention not fairly expressed therein." *Ahern v. Laconia Country Club, Inc.*, 118 N.H. 623, 625, 392 A.2d 587, 588 (1978). Therefore, the statute now under consideration does not provide a procedure for imposing the death penalty when a defendant pleads guilty, and reliance on the 1903 statute construed in *Comery* cannot provide what the 1977 legislature failed to provide when it enacted former RSA 630:5. *See Jackson*, 390 U.S. at 579–80.

We note in passing that prior to the enactment of former RSA chapter 630, *see* RSA 585:4–5 (1955), *repealed by* Laws 1974, 34:12, as well as after, *see* current RSA chapter 630, the legislature explicitly authorized the use of a jury to determine the appropriate sentence when a defendant pled guilty to capital murder. As we indicated earlier, the language in former RSA 630:5 is so clear and

explicit that we cannot accept the State's interpretation of it as providing for the impanelment of a jury to determine whether the death penalty should be imposed on those who plead guilty to capital murder. Therefore, we hold that the statute is unconstitutional on its face. Whether the legislature acted to correct an omission in former RSA 630:5 when it enacted current RSA 630:5 is of little consequence. "[T]he question before us is not what the legislature ought to have done when it enacted [the former] statute but what it did, as expressed in the words of the statute itself." *Ahern*, 118 N.H. at 625, 392 A.2d at 588.

Accordingly, we affirm and remand.

*Affirmed and remanded.*

All concurred.