Merrimack, {
April 7, 1931. {

ARTHUR L'ESPERANCE *v.* FREDERICK D. SHERBURNE.

RITA L'ESPERANCE *v.* SAME.

*Demond, Woodworth, Sulloway & Rogers (Mr. Jonathan Piper* orally), for the plaintiffs.

*O'Connor & Saidel (Mr. Saidel* orally), for the defendant.

PEASLEE, C. J.  The automobile accident which is the basis of these suits occurred in Hooksett, on the Daniel Webster highway. For convenience the driver of the plaintiff's car, Arthur L'Esperance, is spoken of as the plaintiff.  He was traveling south, the defendant north.  The defendant, in turning his car west to enter the driveway to a house on that side of the road, came into collision with the plaintiff's car.  There was evidence that this occurred on the westerly half of the macadam surface of the road.

I. The defendant's claim that there was no evidence of his liability is clearly unfounded.  Without detailing the evidence, it is enough to say that it would have warranted findings of negligence on the part of both, or one, or neither of the drivers.

II. The jury were instructed in part as follows:

"There is another statutory provision which provides that 'if a person traveling on a highway with a vehicle meets another person so traveling, in an opposite direction, he shall seasonably turn to the right of the center of the traveled part of the road so that he may pass the other without interference'.

"It further provides that if a person violates this latter statute he shall be liable to a fine and in addition thereto shall be liable for the damages occasioned thereby; but no action for such damages shall be sustained unless begun within one year.

"This accident happened on November 8, 1926, and the suits were not brought until July 24, 1928.  Mr. L'Esperance, therefore, cannot base any claim to damages upon a violation of this particular statute, but that does not deprive him of his right to recover damages for the violation of other provisions of the statute or for negligence.  But you are entitled to consider the statutory provision upon the question of the negligence of both drivers."

These instructions informed the jury that the statute quoted therein was applicable to the situation of the parties.  It is not entirely

clear just what use of the statute they permitted the jury to make. But they at least intimate that the defendant's act in entering upon the left hand lane for the purpose of leaving the highway upon that side was a violation of the law. This was error. The statute regulates the acts of those meeting and passing one another on the highway. It makes no reference to conduct when the route of one lies across that of the other. It contemplates a situation where, if the statute is obeyed, there cannot be a collision because their paths never meet. In this case their paths of necessity crossed, and the rule that each should keep off the other's right of way cannot be applied.

This is, in substance, the construction put upon the statute in *Brooks* v. *Hart*, 14 N. H. 307, 310. "By the terms 'seasonably, turn, drive' &c., is meant, we think, that the travelers shall turn to the right in such season that neither shall be retarded in his progress, by reason of the other occupying his half of the way which the law has assigned to his use, when he may have occasion to use it in passing. In short, each has the undoubted right to one half of the way, whenever he wishes to pass on it; and it is the duty of each, without delay, to yield such half to the other."

Recent legislation demonstrates the soundness of the foregoing conclusion as to the legislative intent. If the defendant had been bound to yield the right of way to the plaintiff, he would have been equally bound if, instead of merely turning, he had been approaching from the east upon a road crossing that traveled by the plaintiff. But the act of 1923 (Laws 1923, *c.* 78, *s.* 1; P. L., *c.* 90, *s.* 3) imposes that duty upon him. This act was wholly superfluous if the then existing statutory law of the road covered the situation, and its enactment is in substance a legislative declaration that the earlier statute does not apply.

But it is argued that even upon the foregoing interpretation of the statute, it still had applicability to the situation of the parties in the determination of the issue of their care. The argument seems to be that because of this statute the rights of the traveler who purposes to continue along on the right hand side are superior in law to those of the one proposing to turn to his left and go off that road; and that the through traveler has because of the statute, a right to assume that the other is also going straight on. Neither position can be sustained.

This statute does not undertake to regulate the conduct of the parties when their ways cross, and it does not give to either of them any superior right at the junction of their ways. And if the statutory rule for conduct of meeting travelers gives each the right to assume

that the other will obey the law, that assumption has no direct application to a situation which is not within the statute, and where there has been no violation of the statute. It gave the plaintiff no right to also assume that if the defendant was about to turn into the driveway he would keep on the right side of the road. Nor did knowledge of this statute and the practice under it afford any ground for an assumption that no one would wish to exercise his right to cross from right to left to enter premises there adjacent.

It is probably true that not one car in a thousand going north on this busy thoroughfare would make the turn. But no one approaching from the other direction could tell in advance which approaching north bound traveler was the exception to the general course of travel. The statute merely gives added assurance that the conduct of the through traveler may be relied upon to keep the opposite lane clear. It neither adds to nor takes from the probability that some traveler will not be of that class, but will wish to make the turn.

It may be that the fact that the left hand lane is usually left free for the use of the oncoming traveler calls for added vigilance on the part of one who is about to use it in crossing. And to reinforce the argument it may be proper to call attention to the statute to show how definite the rule for through travel is. But this is only a method of proving the circumstances under which the defendant acted. It merely shows the surrounding facts in view of which his care or negligence in the exercise of his right to cross is to be ascertained.

As applied to his own conduct, the law of the road admonishes the traveler to keep to the right as he goes ahead. It may also be said to call for caution when he turns across the left track, upon the ground just stated.

As applied to his anticipation of the conduct of others it may have materiality in justifying the inference that they will keep to the right, unless they have occasion to cross.

All this is but the application to a concrete situation of the abstract rule that one must use reasonable care under the circumstances. The rule applied to both parties. The plaintiff was bound to know that the defendant might have a purpose to turn and it was his duty to keep a reasonable lookout for action to that end. So too the defendant was bound to give timely warning of his purpose and to exercise his right with due care. The comparative infrequency of his act might in reason call for more vigilance than the rule of due care would demand under other circumstances.

As already indicated, the unviolated law of the road has only a re-

mote bearing on the care of the respective parties. Whether the instructions given permitted a different use of the statute as a rule governing their rights, need not be determined, as the verdict is set aside on another ground.

III. The defendant was a resident of Massachusetts, duly licensed there to operate an automobile during the year 1926. His car was registered in that state for a like period. The evidence was conflicting as to whether he had operated the car in this state, under such permits, more than twenty days (P. L., c. 100, s. 28) in that year before the date of the accident.

Subject to exception, the jury were instructed that if they found against him on that issue they were to conclude that he was in fault and that the plaintiffs could recover, in the absence of proof of contributory fault.

In *Johnson* v. *Railroad*, 83 N. H. 350, it was held that the act of driving a motor vehicle by an unlicensed person, if causal, is a private wrong rendering the driver accountable for damage caused thereby. In the case at bar the question is presented whether one licensed under the laws of another state is subject to the same liability. The answer is to be found in a consideration of the reasons which led to the conclusion as to an unlicensed driver, and the legislative recognition of the assurance of fitness which a foreign license affords.

The person licensed to drive by another state is treated in the statute as one sufficiently certified to be competent. He may drive his duly registered car in this state for twenty days. P. L., c. 100, s. 22; c. 101, s. 12. And if he operates under a neutral zone registration, he may do so continuously throughout the year without any local license. P. L., c. 100, s. 28; c. 101, s. 12. These provisions plainly indicate that the legislature deemed the matter of public safety to be sufficiently provided for by a license to operate issued by any state. The other provisions requiring a local license for the non-resident operator under other circumstances, are almost entirely concerned with the revenue features of the law. It is true that their observance may afford some aid in the matter of identification, but that alone is not sufficient to show that there was a legislative purpose to class violators with those deemed incompetent. *Clark* v. *Hampton*, 83 N. H. 524.

The reasons which led to the conclusion that the legislature intended to make unlicensed driving a civil wrong do not apply here. The situation of the driver licensed in another state falls rather within the class of those whose violation of the statute is prohibited for other reasons than protection from careless or incompetent driving. This

distinction was clearly brought out in *Lindell* v. *Stone,* 77 N. H. 582.

But it may be said that since the statute has one common prohibition as to all drivers, forbidding operation of motor vehicles on "any way in this state" (P. L., c. 101, s. 9) by those not licensed as provided in the act, the effect of the provision must be the same as to all who are of the class described; and since it has been determined that the statute, taken as a whole, imposes civil liability for its violation under certain circumstances, that liability must attach to all who are within the prohibition.

Here, as always, the question of interpretation is one of finding the legislative intent. The imposition of civil liability extends no further than the legislature intended. When there is language in the act showing an intent to impose a liability upon a distinctive part of a class subject to a general prohibition and not upon the remainder of the class, the limitation of the liability is as much a part of the statute as the imposition of liability.

Requirement of some license to drive is imposed in the interest of public safety. Requirement of a local license for the holder of a foreign one is for other purposes. Civil liability follows from the former because the purpose of the prohibition against the unlicensed is transgressed by the wrong complained of. It does not follow from the latter, because the purpose of the law as to the non-resident has no relation to the wrong done to some individual. The prohibition of driving by one holding a foreign license, being imposed only under certain circumstances which have no relation to his competency, his violation of the prohibition has not been made a private wrong.

It was pointed out in *Lindell* v. *Stone, supra,* that if the employment of one of school age had been during vacation, violation of the statute would not be a ground for a claim of civil responsibility for injuries received in the employment; and the fact that it was when school was in session would not change the result. So here, if the defendant had been operating a new car instead of the one he had used over twenty days there could have been no complaint of such act; and the fact that the car was being operated beyond the limited period did not change his status of competency.

The legislature has declared that the unlicensed driver is barred by unfitness. As a part of the same act it is provided that the driver holding a foreign license is deemed to be fit. Civil liability of the unlicensed being predicated upon a legislative intent to classify him with the unfit, the intent to impose that liability cannot be inferred as to a class which the same statute treats as competent.

Since it appears that driving by the unlicensed is prohibited to promote the public safety, but that driving by the holder of a foreign license is often permitted, and is forbidden only under certain conditions and for revenue purposes, it follows that a violation of the statute by the latter is immaterial in a civil suit to recover damages for injuries caused by such driving. *Lindell* v. *Stone*, 77 N. H. 582; *Clark* v. *Hampton*, 83 N. H. 524.

Because of the error in permitting a recovery upon this ground, the verdict must be set aside.

IV. Certain exceptions to the introduction of evidence have been argued. In so far as the questions are likely to arise in a future trial of the case, they have been considered.

In his testimony, the defendant claimed that he had stopped east of the median line of the highway when struck by the plaintiff's car. Subject to exception, the plaintiff was permitted to cross-examine the defendant on his statement to the commissioner of motor vehicles, wherein he said "as I pulled to the left a car going south struck my car's left front wheel." The statement said nothing about being stopped at the time.

The objection urged is that since the statement contains nothing about stopping, it does not contradict the testimony that the defendant had stopped. It would seem that a fair construction of the language "as I pulled to the left" would include an assertion of continued motion. But whether this be true or not, the mere omission was evidence against the defendant. It was his statutory duty to report to the commissioner "the circumstances of the accident." P. L., *c.* 102, *s.* 17. His filing the report was in effect an assertion that it contained a recital of all the material facts known to the declarant.

The plaintiff Rita was unconscious after the accident. A physician was summoned and there was some talk as to whether she should be taken home or to a hospital. The defendant's statement to the physician, "Go somewhere with this girl, I am responsible," was put in evidence. It is argued that although this was an assumption of liability for the physician's services, it could not be deemed an admission of responsibility for the accident.

The statement also fairly imports an acknowledgment of fault. He did not say, take care of her and I will pay. On the contrary the language identifies him as the party already under a legal duty to pay. And besides this, his subsequent denial of the statement gave it character as an admission. *McCurdy* v. *Flibotte*, 83 N. H. 143.

The defendant excepted to the introduction in evidence of the standard mortality tables, showing the plaintiff Rita's expectation of life. She was a neurotic young woman, and the evidences of her continued disability were very largely subjective. The ground for the exception is the claim that there was no evidence of permanent injury. The most favorable medical testimony on this point was not definite, but one physician stated that in his opinion she had "a condition that you might say is permanent there and she may always have some trouble with it and she may gradually become better." And again: "It might trouble her indefinitely." He was unable "to give any probable time when that trouble will disappear."

The question is whether this can be deemed a "positive opinion" upon which a finding of life long disability could be based. *Nadeau* v. *Stevens*, 79 N. H. 502, 503. The issue to be proved was one upon which "common knowledge furnishes no criterion for judgment and evidence becomes indispensable." *Russell* v. *Railroad*, 83 N. H. 246, 249. And the evidence must show more than a mere chance. It must establish a balance of probability. Proof of some probability is not enough. The proposition must be shown to be more probably true than not. *Salinger* v. *Salinger*, 69 N. H. 589; *Russell* v. *Railroad*, *supra*.

It is true that there is a mass of authority opposed to the foregoing proposition. There seems to have been a quite prevalent failure to apply to this situation the fundamental rule that a party seeking redress in a court of justice must prove his case. It may fairly be said that the courts generally have refrained from applying the common test of the sufficiency of proof in these instances, and have substituted therefor all sorts of phrases, none of which so clearly defines the required *quantum*, and most of which fall far short of substituting an equivalent.

The situation has been summed up in the following language. "The essential thing is that a basis for the damages be shown by a preponderance of evidence to be reasonably certain to be suffered, or at least that it is fair to believe they will be so suffered. The notes to this section disclose that varying forms of expression are employed to designate the sufficiency of the evidence required to authorize a verdict for future suffering. The divergence of views is so great that it is of doubtful utility to undertake to formulate a rule on the subject, if, indeed, its nature is such as to allow of that being done. The weight of authority appears to favor such expressions as these: The evidence is sufficient if it shows that the anticipated consequence is reasonably

probable to follow, or will naturally, reasonably and probably result, or there is a reasonable probability it will result, or it is reasonably certain to follow." 4 Suth., Dam., s. 1251.

The statement that the damage must "be shown by a preponderance of evidence to be reasonably certain to be suffered," may perhaps be construed to be equivalent to the true rule, though objectionable as open to other interpretation. The following statement— "fair to believe they will be so suffered,"—affords no test known to the law. And the same thing is true of the other forms stated as containing the drift of judicial opinion.

It is also difficult to appreciate the obstacle thought to prevent the declaration of a certain rule. Why should the rule as to *quantum* of proof be different here from that in all other aspects of remedial procedure? It is of course true that in the main future events cannot be demonstrated as certainties. But the same thing is largely true of past events. The law does not require such practical impossibility in either case. It merely requires a balance of probability in both.

Running through many of the discussions of the subject of future loss is the apparent thought that there are two issues to be dealt with. It is well illustrated by the following quotation. "He is not restricted to compensation for suffering and expense which by a fair preponderance of the evidence he has proved will inevitably follow. He is entitled to compensation for suffering and expense which by a fair preponderance of the evidence he has satisfied the jury reasonably are to be expected to follow, so far as human knowledge can foretell . . . what suffering and expense reasonably will follow, as distinguished from what possibly may follow. . . . reasonably to be expected to follow, as distinguished from those that might follow." *Pullen* v. *Railway*, 208 Mass. 356, 357, 358.

This seems to imply that if there be a balance of probability of a reasonable expectation it is sufficient, although there is no balance of probability in favor of the happening of the event reasonably expected. This must be the true construction of the opinion unless reasonable expectation is limited to things more probably likely to occur than not to occur. If it is so limited, no reason is apparent for a departure from the use of the common and well understood phrase, more probable than otherwise. The proposition advanced is that the finding is to be made if it is more probably true that it is more probably true.

Is this a mere repetition of words, or is it a probing of the depths not theretofore undertaken? Is there here an added direction as to

how the trier shall ascertain the sufficiency of the proof, or merely a redundant statement of that which has heretofore been deemed adequate? When a jury are told that they are to find for the plaintiff if upon a consideration of all the evidence they find that his contention is more probably true than otherwise, have they been sufficiently instructed, or should they also be told that in reaching a conclusion as to balance of probability they need not be absolutely certain where it lies but should act upon the balance of probability on that matter?

If there be some probability of a probability the latter probability exists. The descriptive term merely limits its quality. It is still a probability. And so if it be more probable that a thing is more probable it is more probable. The law does not undertake to say how much more probable. Any degree suffices. If this were not so, the application of the proposed formula would result in treating things as proved although not shown to be more probably true than otherwise.

If reasonable expectation is to be taken as the equivalent for more probable than otherwise, the use of the two phrases adds nothing to the statement of the latter without qualification. If, on the other hand, reasonable expectation is designed to describe a future event, the likelihood of the happening of which need not be shown by a balance of probability, its effect is to permit a recovery for items not proved, if the statement is used as a measure of proof.

In not a few instances however the language used by the courts appears to be based upon a theory of substantive law, differing from that usually adopted. These cases fairly imply that the issue involved is not one of proof, but rather of the elements for which a recovery is permitted. The plaintiff is then deemed entitled to recover for reasonably anticipated suffering, just as he is entitled to compensation for actual past suffering. In each case the required facts need only be shown by a balance of probability. Reasonable anticipation only need be proved, because the substantive law gives him compensation on that basis. The cases turn upon a decision as to what is recoverable damage, rather than on a determination of sufficiency of proof.

No such extension of liability has ever been recognized in this jurisdiction, and we do not think it should be adopted. Compensation for a wrong ought not to exceed the damage done; and what damage has been done is a matter for proof. The rule as to what is recoverable should not be one thing as to events occurring before the trial and another as to those lying in the then future. As pointed out in *Salinger* v. *Salinger*, 69 N. H. 589, 592, delay in time of trial merely "helped to make certain that which must have been less certain if the

case had been tried at an earlier date." There is no shifting of the rule for recovery, but merely a change in the availability of proof.

None of the authorities furnish any satisfactory grounds for abandoning the simple and long used test for proof of future damage. Is it more probable than otherwise that the damage is to follow? Here as elsewhere, efforts to amplify the rule are fairly open to Wigmore's criticism. ". . . this simple . . . phrase has not been allowed to suffice; and in many precedents sundry other phrases . . . have been put forward as equivalents, and their propriety as a form of words discussed and sanctioned or disapproved, with much waste of judicial effort." 5 Wig., Ev. s. 2498.

It seems apparent that the testimony in the present case was not a sufficient basis for a finding that it was more probable than otherwise that her troubles would last for forty-one years. While the physician stated that he was unable to fix any probable time when the trouble would disappear, that does not meet the issue. Uncertainty when it will disappear does not equal probability that it will not disappear. *Matthews* v. *Lamberton*, 184 Mich. 493. For this reason the life tables should have been excluded.

One claim of the plaintiff Rita was that because of the injuries received she was obliged to undergo an operation for the removal of her left ovary at a hospital in Pittsburgh, Pennsylvania, about a year after the accident. The surgeons then attending her did not testify. The plaintiff did not state the nature of the operation, save that after it she was relieved of pain in her side. A physician who examined her shortly before the trial testified that he could not find the left ovary, and that this might be accounted for by its having been removed or by its shrivelling away. He also stated that, taking into account the plaintiff's statement that the trouble in her side was relieved by the operation and that he could not find the ovary on that side, he "should consider that it was taken away in the performance of that operation." Going on from that he testified that necessity for the removal might be caused by a blow over the ovary causing a direct injury thereto, or by injury causing displacement of the womb thereby creating undue pressure and degeneration of the tissues of the ovary. He added that from the history of the case and his examination he found no cause but the accident to which to attribute the trouble for which she was operated on at Pittsburgh.

There is here a considerable intermingling of the use of scientific knowledge and drawing inferences of fact. The former told the witness that the ovary was missing and assigned for cause removal or

atrophy. The other mental operation then came into play. She had an operation in Pittsburgh which relieved pain in that side. Therefore it was inferred that the operation was removal of the missing ovary. Again, science told him that trouble with the ovary would come from a blow. She had no blow save at the time of the accident. Again drawing an inference of fact from all of the foregoing he concludes that the blow of the accident caused trouble with the ovary, necessitated the operation and created the expense thereof.

It is argued that this carries inference too far, for inferences of fact must be drawn from facts proved and not from other inferences. While the rule has been so declared in two cases (*Cole* v. *Boardman*, 63 N. H. 580; *Deschenes* v. *Railroad*, 69 N. H. 285), the objections thereto have been bluntly stated as follows: "There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted." 1 Wig., Ev. s. 41.

Unless the inference be too remote in logic, or offend against the rules as to confusion of issues, or surprise, it may as well be drawn from another inference, properly drawn from facts sworn to by a witness, as the first inference. *Ib., s.* 41.

But the manner in which the matter was put before the jury is open to criticism. It would have been permissible to assume the properly inferable non-scientific facts as parts of a hypothetical question, calling for expert testimony as to the scientific information needed to make the other facts intelligible, but leaving wholly to the jury the duty of drawing the non-scientific factual inferences. Here the witness not only testified to scientific facts and inferences, but gave the jury the benefit of his opinion as to non-scientific ones. This was improper, although the whole mental process by which the ultimate conclusion was reached was put before the jury so that they were in a position to judge whether the inferences were well drawn. It was not for the witness to give them expert assistance in the performance of their layman's duty of drawing inferences of fact.

The substance of the facts thus put in evidence was admissible, and the question of its sufficiency is presented. While this evidence cannot be deemed very satisfactory, in view of the apparent availability of the testimony of those who attended her in Pittsburgh, it does afford some rational basis for the conclusion that the expenses incurred and the suffering undergone at Pittsburgh were the results of the accident. It follows that such expenses were properly admitted in evidence as a part of her claim for damages.

All concurred. *New trial.*