Grafton,
No. 6368.

Raymond O. Patterson, administrator *v.* William E. Corliss.

Harold G. Percy *v.* Same.

December 29, 1972.

*James J. Kalled,* by brief and orally, for the plaintiffs.

*Nighswander, Lord, Martin & KillKelley (Mr. David J. KillKelley* orally) for the defendant.

Duncan, J. The plaintiff administrator's intestate, Ethel M. Percy, and her husband Harold G. Percy, brought these actions to recover damages arising out of a collision which occurred on June 8, 1967, at Hebron, when an automobile operated in a southerly direction by the defendant was in

collision with the plaintiff husband's automobile, operated by the plaintiff wife, when it entered the highway from a driveway on the westerly side, for the purpose of proceeding north. Trial was by jury, with a view, and verdicts were returned for the plaintiffs. The plaintiff Ethel, herein referred to as the plaintiff, has deceased since the trial, and her administrator has appeared to prosecute her action.

In the course of the trial, the defendant excepted to denial of motions for nonsuits and directed verdicts and to denial of his motion to put certain questions to the jurors on *voir dire*. He also excepted to certain instructions to the jury, to the denial of certain of his requests for instructions, and to the denial of his motions to set aside the verdicts and for judgments nothwithstanding the verdicts. The questions of law presented by these exceptions were reserved and transferred by the Presiding Justice, *King, J.*

The accident in question occurred on Route 3 in Hebron, near the Bridgewater town line, in the late forenoon as the plaintiff Ethel, aged 64, was leaving the Whip-o-will Motel and cottages where she was employed as a cook. It was raining, and the highway was wet and rain-slicked. She was operating a 1965 Chevrolet stationwagon. The defendant, aged 25, was operating a 1964 Chevrolet convertible, with temporary plates.

It was not disputed that following the collision, the defendant's vehicle came to rest just north of the Whip-o-will driveway, where it was wholly in the southbound lane, close to the centerline, with the left front wheel resting on its rim; and that the plaintiff's vehicle was opposite and somewhat north of the defendant's, headed in a northerly direction on the easterly shoulder, its right wheels in or close to the gravel ditch.

In support of his motions for nonsuits and directed verdicts, the defendant relies upon the proposition that the plaintiff's testimony postulated a physical impossibility, and that she is bound by her own testimony and should not be permitted to recover. *Bartis* v. *Warrington*, 91 N.H. 415, 20 A.2d 642 (1941). The argument is that it was impossible that plaintiff's vehicle could have been struck "while over at the edge of the northerly lane and then have ended up as shown

by the photographs" taken before the vehicles were moved.

The plaintiff testified that when she entered the highway there were no vehicles in sight, and that the defendant's automobile came into view over the crest of a hill to the north as she reached the northbound lane and that it "immediately started coming onto my lane ... more or less sideways ... so much in my lane that I couldn't proceed, and I pulled out to the very edge of the ditch ... and took my foot off the accelerator ... he hit me right where the door hinge and windshield is ... and I felt myself going into the ditch and sliding backwards ...."

The defendant testified that he was travelling at a speed of fifty miles an hour as he came over the hill after rounding a curve to his left, that when he saw the plaintiff entering the highway he applied the brakes, "went into a skid ... I let up ... tried to go around her, ... turned back, and at this moment was impact ...."

The photographs showing the damage to the automobiles make it plain that the vehicles could not have come together when the plaintiff's car was crosswise of the road and half in the southbound lane, as the defendant testified. Rather they indicate that the left front of the defendant's vehicle struck the left side of the plaintiff's car in such a way that the plaintiff's car must have been northbound and headed toward the ditch, as her testimony and other evidence indicated. A photograph of marks upon the highway showed gouge marks made by the defendant's left front wheel, proceeding across the center line from the north to the southbound lane, together with a tire track or "erasure" mark leading into the gouge mark. This track or mark commenced several feet north of the gouge mark and in part ran parallel to the center line at a distance of three to four feet within the northbound lane.

Thus from the evidence the jury could reasonably find that the accident happened substantially as the plaintiff said it did: that her car was struck in the northbound lane while it was on an angle toward the ditch, and that the force of the collision moved it backward toward the south, while the defendant's car caromed across the center line into the northbound lane.

There was evidence that the crest of the hill was some four hundred fifty feet from the driveway from which the plaintiff entered the highway. If the defendant was travelling at a speed of fifty miles an hour as he testified, it is true that the plaintiff would have reached the northbound lane within the time that it took the defendant to reach the point of collision. This was what the plaintiff testified did happen. The jury was not bound to accept the defendant's testimony as to his speed, and could have found from expert testimony that his vehicle must have been "hydroplaning" upon the water on the highway, so that the slope of the road toward the east would have caused it to gravitate into the plaintiff's lane of travel until such time as the defendant recovered control so as to execute the turn back toward the southbound lane which he testified he made.

Accordingly, the defendant's argument of physical impossibility is not accepted. We are satisfied that the issues of defendant's negligence and plaintiff's contributory negligence were issues for the jury, and that the motions for nonsuits and directed verdicts were properly denied. For like reasons we see no merit to the defendant's argument based upon the rule of *Bartis* v. *Warrington,* 91 N.H. 415, 20 A.2d 642, and no error in the instructions to the jury that both parties were under a duty to maintain a proper lookout and to keep their vehicles under proper control.

The defendant excepted to the denial of several requests for instructions, and places particular emphasis upon the denial of those relating to "pure accident" and "skidding". The defendant testified that he skidded as he applied the brakes just over the crest of the hill; but he made no claim that his skidding caused the collision. He testified that he turned to the northbound lane in order to pass ahead of the plaintiff, but then turned back toward the southbound lane, too late to avoid collision. Thus on his testimony, a finding of causal skidding could not reasonably be made. His contention was that the plaintiff started to cross the southbound lane when he was only 125 feet away, and that the collision was caused for that reason.

The plaintiff's evidence tended to show that the defendant was carried into the northbound lane by the hydroplaning

of his vehicle on the surface water on the highway, due to his speed. None of the evidence merited the requested instruction that "skidding in and of itself is not negligence", or the requested instruction that there should be defendant's verdicts.if it were found that the accident was caused "merely because the car skidded, that it was a pure accident". In the usual case, it rests within the discretion of the trial court to determine whether such instructions shall be given. *LaDuke* v. *Lord,* 97 N.H. 122, 83 A.2d 138 (1951); *cf. Perks* v. *Shor,* 110 N.H. 273, 266 A.2d 127 (1970); *Adley Express Co.* v. *Bruzzese,* 104 N.H. 283, 184 A.2d 564 (1962). The jury was told that "a person can only recover when the other party is legally at fault", which was defined in terms of causal negligence. On the evidence in the case, the requested instructions were properly denied, in the court's discretion.

After instructing the jury upon the issues of negligence, statutory violation, and causation, the trial court read the provisions of RSA 262-A:54 I and RSA 262-A:54 III, including the provision of subsection III, requiring a driver to drive "at an appropriate reduced speed when approaching an intersection", and "when approaching and going around a curve, when approaching a hillcrest . . . and when special hazard exists with respect to pedestrians or other traffic by reason of weather or highway conditions." The defendant argues that the reference to approaching a curve and a hillcrest were inapposite because of their distance from the point of collision (*Martin* v. *Kelley,* 97 N.H. 466, 92 A.2d 163 (1952)); and that the reference to approaching an "intersection" was prejudicial because the way from which the plaintiff entered the highway was a private drive. *See* RSA 259:1 XIII, XXXV.

There was evidence that the defendant had driven for a substantial distance at a consistent speed of forty-five or fifty miles an hour both around a curve and over the hillcrest above the scene of the accident. It was findable that this speed was such as to result in the "hydroplaning phenomenon" and contributed to cause the accident. The driveway from which the plaintiff entered the highway was not referred to at the trial as an "intersection" and the court prefaced the reading of the statutory excerpts with an instruction that the jury should determine "whether the facts fall under them

or do not fall under them". Moreover the defendant was aware from the pretrial order that the plaintiff relied upon RSA 262-A:54, but requested no instructions restricting its application. In the circumstances we see no reason to conclude that the jury may have been misled by the instructions given.

We also hold that the court did not err in denying the defendants requests 24 and 26 relating to turning movements and signals (RSA 262-A:42), and failure to keep to the right by reason of an emergency, or the blocking of a lane of travel. The charge contained no reference to the duty to keep to the right of the center, and the cases were submitted on the basis of the common-law duty to exercise reasonable care. An exposition of the statutory duty imposed by the law of the road as to vehicles meeting each other (RSA 262-A:15, 16) and the various statutory or common-law exceptions justifying departure from the rule (RSA 262-A:15; *Lynch* v. *Bissell*, 99 N.H. 473, 477, 116 A.2d 121, 125 (1955)) would have added nothing to the common-law principle of reasonable care under the circumstances which was adequately explained in the charge. *L'Esperance* v. *Sherburne*, 85 N.H. 103, 106, 107, 155 A. 203, 205 (1931).

The testimony of the parties as to how the accident happened was in direct conflict. According to the plaintiff her car was proceeding northerly in the northbound lane when the vehicles collided. According to the defendant it was proceeding at a right angle to his southbound course, and broadside of the road, partly in both lanes. On this state of the record, the defendant's requests 16, 17 and 18 to the effect that the plaintiff could not recover on a finding of conduct contrary to her own testimony had no relevance and were properly denied. The plaintiff sought to recover on the basis of her own testimony, and it is not perceived how the rule of *Bartis* v. *Warrington*, 91 N.H. 415, 20 A.2d 642 (1941), and the eroded rule of *Harlow* v. *Leclair*, 82 N.H. 506, 136 A. 128 (1927), could apply.

The defendant's motion that the court put a series of nine questions to prospective jurors on *voir dire* was properly denied. The questions sought to determine whether the jurors understood principles relating to burden of proof, contributory negligence, pure accident, skidding, emergency

and the like in advance of any instructions upon such issues. Apart from the questions which are customarily put to the jurors by the court pursuant to RSA 500:32, the extent of the *voir dire,* whether by the court, or by counsel in capital cases (*State* v. *Comery,* 78 N.H. 6, 12, 95 A. 670, 673 (1915)), is wholly within the discretion of the presiding justice. *See also* RSA 519:20. This practice has been considered "flexible and fair", and to permit necessary examination as individual cases require, in the court's discretion. Fifth Report of the Judicial Council 12-13 (1954); *see* Standards Relating to Trial by Jury *s.* 2.4 (ABA Approved Draft (1968)); 47 Am. Jur. 2d Jury *s.* 200, at 789 (1969). The motion which sought in part to determine the effect of assumed states of fact upon the attitude of the jurors was properly denied. *See Sherman* v. *William M. Ryan & Sons,* 126 Conn. 574, 578, 13 A.2d 134, 136 (1940).

*Judgment on the verdicts.*

All concurred.