Hillsborough
No. 78-134

## THE STATE OF NEW HAMPSHIRE

v.

## EUGENE DUFIELD

January 31, 1979

*Thomas D. Rath*, attorney general (*Peter W. Heed*, assistant attorney general, orally), for the State.

*S. David Siff*, of Concord, by brief and orally, for the defendant.

PER CURIAM. This case raises issues concerning the right to a speedy trial and the circumstances surrounding the testimony of an accomplice. The defendant was indicted for armed robbery by the Hillsborough County Grand Jury in September 1975, and the case was originally scheduled for trial in Hillsborough County on February 9, 1976. On that date the defendant's motion to continue and to transfer this indictment to Merrimack County for possible disposition by plea

bargain along with seven other prior indictments then pending against him in Merrimack County was granted. In May 1975, the defendant had filed a petition for early trial on those seven indictments. In May 1976, he was brought to trial in Merrimack County on one of the seven indictments, which was a Rockingham County indictment which also had been transferred to Merrimack County, and he was found guilty of burglary. He was sentenced to a term of not more than three years nor less than one year at the State prison. In February 1978, the remaining six indictments, all of which had been returned by the Merrimack County Grand Jury, were dismissed by the Court (*Batchelder*, J.) for lack of speedy trial. The Hillsborough County armed robbery indictment was not dismissed but was sent back to Hillsborough County Superior Court on February 6, 1978. On February 8, 1978, defendant moved to dismiss the Hillsborough County indictment for lack of speedy trial. That motion was denied by the court. On March 9, 1978, approximately one month after it was transferred back to Hillsborough County, the defendant was tried and found guilty by a jury on the September 1975 Hillsborough County armed robbery indictment. Defendant was sentenced to the State prison for a maximum of seven years and a minimum of three years. All questions of law raised by the defendant's exceptions were reserved and transferred by the Trial Court (*Dunfey*, J.)

■ The defendant alleges that the State's failure to bring him to trial on the Hillsborough County indictment until March 1978 constitutes a denial of his right to a speedy trial. This court recently had occasion to deal with the right to speedy trial. *State v. Cole*, 118 N.H. 829, 395 A.2d 189 (1978). In that case we stated:

> The right to a speedy trial is guaranteed by both the sixth amendment to the Federal Constitution, which is applicable to the States, and the constitution of this State, N.H. CONST., pt. I, art. 14. We have stated that this "right is necessarily relative, and must be considered with regard to the practical administration of justice." (Citations omitted.)

In considering speedy trial claims, this court looks to the four factors stated by the United States Supreme court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Those factors "are (1) the length of the delay, (2) the reasons for the delay, (3) the responsibility of the defendant to assert his right, and (4) the prejudice to the defendant." *State v. Cole*, 118 N.H. 829, 831, 395 A.2d 189, 190 (1978); *see State v. White*, 116 N.H. 687, 688, 366 A.2d 872, 873 (1976). The time between indictment and

actual trial in this case was approximately two and one-half years. Defendant was arrested on a capias in connection with this indictment on December 29, 1975, arraigned on January 13, 1976, and his trial was scheduled for February 9, 1976, less than one month after his arraignment. The defendant requested a continuance, thereby temporarily waiving his right to a speedy trial and it was not until two years later, in February 1978, that he reasserted his right to speedy trial on this indictment. The motion for speedy trial filed in May 1975, before this indictment was returned, related only to the prior indictments.

■ Although a defendant who fails to demand a speedy trial does not forever waive his right, *Barker v. Wingo*, 407 U.S. at 528, "failure to assert the right will make it difficult for the defendant to prove that he was denied a speedy trial." *Id.* at 532. The defendant's temporary waiver of his right to speedy trial after his trial had been scheduled and his failure to assert his right to a speedy trial for two years thereafter weigh heavily against him. The State was prepared to try the defendant in February 1976, and at that time it was he who moved both for a continuance and for a transfer of the Hillsborough County armed robbery indictment to Merrimack County, a tactic designed to consolidate indictments pending against him from several counties for purposes of a possible plea bargain disposing of all. The transfer removed the case from the continuing supervision of the officials who would have been responsible for its processing. When anticipated plea negotiations broke down, the defendant neither made a request for speedy trial on the indictment nor requested return of the indictment to Hillsborough County. Thus, unlike the defendant in *Cole*, the defendant in the present case is to a large extent responsible for the delay of which he complains.

■ ■ Prejudice to the defendant is also a consideration to be weighed in this type of case. *See State v. Cole*, 118 N.H. 829, 395 A.2d 189 (1978); *State v. Blake*, 113 N.H. 115, 122, 305 A.2d 300, 305 (1973). This court, however, will not speculate as to prejudice, and some showing of actual prejudice is normally required when the defendant is himself responsible for much of the delay. *See State v. Cole*, 118 N.H. at 829, 395 A.2d at 190. We find nothing in the record to support defendant's contention that this is a case where delay in trial has resulted in prejudice to him. After weighing the *Barker* factors, as they relate to the facts of this case, we hold that the defendant's right to a speedy trial was not violated.

The defendant also argues that he was denied a fair trial because of the circumstances surrounding the testimony of an unindicted accomplice, Steven Noel. After the jury was impaneled, the prosecutor informed the court that Mr. Noel, a material witness for the State, was reluctant to testify as a State's witness. His reluctance was based on his fear of making self-incriminating statements while testifying. The trial court ruled, however, that Mr. Noel was not entitled to assert his fifth amendment privilege because his sentence for a different crime took into account the present robbery. The court noted that Mr. Noel's disposition slip, dated May 2, 1975, indicated that the sentences imposed barred prosecution or conviction on the robbery charge.

Under RSA 651:4 II (prior to its amendment effective July 25, 1975), trial courts were permitted to take into account other offenses in sentencing and to bar prosecution for those offenses. The court was therefore correct in ruling that Mr. Noel could not incriminate himself through his testimony.

After Mr. Noel stated that he was still unwilling to testify, the court warned him that he was subject to contempt penalties for his refusal to testify. Mr. Noel's reason for then refusing to testify was fear for his personal safety. The trial judge stated in chambers that he would take steps to ensure the safety of the witness. He stated that the primary interest of the court was the administration of justice, and that the ends of justice would not be served if the State could not go forward with its case because of Mr. Noel's refusal to testify. Although the trial judge stated that he had no preconceived notions about the guilt or innocence of the defendant, he entered into lengthy discussions spanning two days, with the prosecution, defense counsel, and Mr. Noel's counsel concerning protection for Mr. Noel. The judge finally ordered that Mr. Noel be transferred to a comparable prison facility in Connecticut. The defendant argues that this conduct by the judge deprived him of his right to an impartial judge under N.H. Const. pt. I, art. 35. He also argues that he was prejudiced by the delay caused by the discussion which took place after the jury had been impaneled.

Although the trial judge may have allowed himself to become too deeply involved in the negotiations preceding Mr. Noel's agreement to testify, we cannot agree that this involvement denied the defendant his right to an impartial judge. Although there can be situations that require a reversal on the grounds argued by the defendant, *see generally State v. Aubert*, 118 N.H. 739, 740–41, 393 A.2d 567, 568 (1978), the present case does not present such a situation. The trial

judge stated in chambers that his goal was to serve the ends of justice on behalf of the State and the defendant, and that he had no preconceived notion of the defendant's guilt or innocence. Further, the trial judge insisted that the prosecutor elicit testimony from Mr. Noel in the presence of the jury concerning his testimony, the promise of a transfer which had been made, and the fact that the two-day delay was caused by the discussions concerning the transfer. The judge allowed defense counsel ample opportunity to cross-examine. Moreover, he properly instructed the jury on the subject of accomplice testimony. Although, in retrospect, the extent of the judge's involvement with the State's negotiations for Mr. Noel's testimony may have been ill-advised, he conducted the trial in a fair and impartial manner. Mr. Noel's testimony was not coerced; he was simply promised a transfer to another prison in order to ensure his personal safety, and the details of this promise were explained to the jury. His testimony was corroborated to a significant extent by the testimony of one of the victims. The circumstances surrounding Mr. Noel's testimony and its admission do not amount to a denial of due process. *See State v. Aubert supra.*

*Exceptions overruled.*

LAMPRON, C.J., concurring: I do not disagree with the dissenting opinion of *Douglas*, J., if it is to be interpreted as advocating an effort toward adopting a rule establishing certain fixed periods of time against which delay could be measured in determining whether a defendant has been deprived of his constitutional right to a speedy trial. *State v. Cole*, 118 N.H. 829, 830–31, 395 A.2d 189, 190 (1978). If, however, it is to be taken as establishing ipso facto such a rule, I am opposed.

The United States Supreme Court has recognized that the right to a speedy trial is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972). It is also a more vague concept than those other rights. *Id.* at 522. Finally the only remedy for its violation is dismissal of the indictment. This means that a defendant who may be guilty of a serious crime will go free without having been tried. *Id.*

To be effective the rule must provide for a constant exchange of information between the prosecuting attorneys and the courts. Furthermore an adequate number of prosecuting attorneys and court personnel, as well as court facilities, must exist to render, at least probable, the prosecution of offenses in the time set by whatever rule is

adopted. ABA Standards Relating to Speedy Trial § 1.2 (approved 1968); New Hampshire Standards and Goals 311 (1977).

If the dissenting opinion serves as a catalyst to the ultimate adoption of such a workable rule to insure a speedy trial to an accused, it will have served a useful purpose. However, there is need to research the above matters before adopting a rule.

DOUGLAS, J., dissenting.   I disagree with the court's holding that the defendant's right to a speedy trial was not violated. A delay of two and one-half years from indictment to trial, and over three years from his preindictment arrest on January 4, 1975, without good cause shown by the State, should be considered a per se violation of the defendant's constitutional rights. Speedy trials protect both the rights of defendants and the interests of the public. Long delays "impair the ability of an accused to defend himself," permit "oppressive incarceration prior to trial," and increase the "anxiety and concern" of the accused. *United States v. Ewell*, 383 U.S. 116, 120 (1966). Delay in the courts "deprives citizens of a basic public service . . . . [I]t is bad because delay may cause severe hardship to some parties . . . and it is bad because it brings to the entire court system a loss of public confidence, respect and pride." H. Zeisel, H. Kalven, Jr., & B. Buchholz, Delay in the Court, xxii (1959). Incentives for delay in criminal cases are strong because defendants sometimes have little to gain from a trial which may deprive them of their liberty, and because prosecutors are seldom interested in prosecuting cases quickly if evidence is weak.

What is needed to ensure speedy trials is "a system of rules and procedures [which] should be concrete and definite." W. Erickson, *The Right to a Speedy Trial*, 10 Houston L. Rev. 237, 244 n.8 (1973). Thirty-six States and various commissions have enacted or recommended concrete time periods. *Id.* at 245 n.47. The American Bar Association has recommended that individual jurisdictions establish specific deadlines to process each type of case. ABA Standards Relating to Speedy Trial § 2.1 (Approved Draft, 1968).

Aside from RSA 594:20-a (Place and Time of Detention) and RSA 596-A:1 (Adjournments), there are no statutes or court rules that provide specific time requirements for processing criminal cases. Instead, we continue to evaluate speedy trial claims using the factors delineated in *Barker v. Wingo*, 407 U.S. 514 (1972). *See State v. Cole*, 118 N.H. 829, 395 A.2d 189 (1978); *State v. Blake*, 113 N.H. 115, 305 A.2d 300 (1973). These factors, however, set no specific time periods against which unacceptable delay can be measured. In *State v. White*, 116 N.H. 687, 366 A.2d 872 (1976), this court even said a delay of over

three and one-half years between an appeal from district court to disposition in superior court was permitted. This court has the authority to adopt specific time constraints by procedural rule. N.H. CONST. pt. II, art. 73-A (as adopted November 7, 1978). *See also Barker v. Wingo*, 407 U.S. at 523.

We are not limited to the balancing test established by the Supreme Court for the determination of violations of the right to speedy trial, but can establish a rule which provides additional safeguards under our State constitution. In other areas of criminal procedure, we have established additional safeguards beyond those mandated by federal constitutional law. *See, e.g., State v. Hogg*, 118 N.H. 262, 385 A.2d 844 (1978) (acquittal in the federal court bars prosecution by the State on charges arising out of the same criminal transaction); *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977) (reasonable doubt standard used in determining the voluntariness of confessions).

We should establish a rule which provides that felonies be tried within specific time limits: six months from the date of initial arrest (or indictment if not previously arrested) in those cases in which the accused is not incarcerated; and three months from the date of arrest in those cases in which the accused is incarcerated. The defendant should not be required to demand a speedy trial. If the defendant files a motion to dismiss prior to trial or entry of a plea after these time periods are exceeded, the trial judge should dismiss the case unless there was good cause for the delay. Some examples of excusable delay are continuances granted at the request of defense counsel, delay caused by other proceedings concerning the defendant, delay caused by the absence of the defendant, or delay caused by unusual docket congestion due to mass arrests. If the case is dismissed on speedy trial grounds, further prosecution for the charged offense should be permanently barred.

These time periods are not unreasonable given the current figures for the disposition of cases in New Hampshire. The average time from complaint to disposition for felonies in the superior court last year was almost eight months, or 232 days; the period from indictment to disposition was less than five months, or 143 days. Supreme Court Judicial Planning Committee, The New Hampshire Court System Comprehensive Plan: 1978, at 21 (1977). The time periods established by such a rule would be more generous than those recommended by the *New Hampshire Court System Standards and Goals Report*, National Center for State Courts (1977), the American Bar Association, and many State statutes. *See, e.g.,* Cal. Penal Code § 1382 (West Supp. 1977) (60

days from filing of information to trial); Nev. Rev. Stat. tit. 14, ch. 178, § 178.556, (1967) (60 days from indictments or information to trial). I note that the average time from complaint to disposition for misdemeanors and violations in the district courts is under thirty days, which is well within the time limits recommended for district and municipal courts in this State. New Hampshire Standards and Goals, *supra* at 316.

In this case, the delay of over three years from arrest is four times the average delay in the superior courts. Even if the time before the defendant moved to consolidate the indictments is excluded, the delay is over two years, or almost three times greater than the average delay. One court has stated in its application of the *Barker* factors that:

> [a] delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial. A heavy burden then shifts to the government to justify the delay. Prejudice to the defendant need not be affirmatively shown after such lengthy delay, and the longer the delay and the less serious the offense, the heavier the government's burden will be.

*Branch v. United States*, 372 A.2d 998, 1000 (D.C. Ct. App. 1977) (citations omitted). A substantial part of the delay in this case was not justified, and I feel the defendant was prejudiced by the delay. He suffered great anxiety during the delay and lost his job when this case went to trial. The defendant had already been incarcerated and paroled for a previous crime that had also occurred in 1974; his parole officer stated that his behavior had been excellent. The fact that the system failed to keep proper track of defendant's case, or that additional funding for the courts is necessary should not be a burden the defendant must sustain by delay. This court recently stated:

> A person in such a situation is unable to lead a "normal life." *Barker v. Wingo*, 407 U.S. at 527. One of the basic reasons for the speedy trial right is "to minimize [the] anxiety and concern of the accused;" another important reason is to limit the possibility that the defense will be impaired." *Id*. at 532. Undoubtedly there is prejudice if witnesses are unable to recall events accurately. Moreover, "loss of memory is . . . not always reflected in the record because what has been forgotten can rarely be shown." *Id*.

*State v. Cole*, 118 N.H. 829, 395 A.2d 189 (1978). In this case memories of the State's witnesses, one being a ninety-year-old blind woman, were

likely impaired after a delay of over three years from the offense to trial. Such delays could easily harm the citizens of this State by causing unwarranted acquittals or the dropping of cases by prosecutors. Justice delayed is justice denied—be it to the people or the defendant. I feel that this case indicates the substantial need for a rule establishing time standards to protect defendants' constitutional rights to speedy trial. Accordingly, I would reverse the conviction as a denial of speedy trial.