Rockingham
No. 80-060

THE STATE OF NEW HAMPSHIRE

v.

DONALD C. WEITZMAN

March 6, 1981

*Gregory H. Smith,* acting attorney general (*Martha V. Gordon,* attorney, on the brief and orally), for the State.

*Donald C. Weitzman,* of Massachusetts, on the brief, pro se, and *Benjamin Hiller,* of Massachusetts, orally, for the defendant.

PER CURIAM. As the result of his participation in a demonstration at the construction site of the Seabrook nuclear power plant, the defendant was charged with criminal trespass under RSA 635:2. He was found guilty in the Hampton District Court and appealed to the Rockingham County Superior Court, requesting a jury trial. Before trial, the defendant filed a motion to dismiss for lack of a speedy trial, a motion to disqualify the jury pool on the grounds that blacks and persons under thirty years of age had been systematically excluded, a motion to conduct voir dire and/or propound specific questions to the jury, and a motion to use the competing harms defense provided for by RSA 627:3. The Superior

Court (*Temple*, J.) denied the motions and proceeded with the trial. The jury found the defendant guilty. The defendant appeals his conviction, claiming that the trial judge erred in denying his pre-trial motions. We affirm the decisions of the trial court.

We address first the defendant's argument that he was denied his right to a speedy trial by a delay of thirteen months prior to his arraignment in superior court. Both the United States and the New Hampshire Constitutions guarantee a criminal defendant a right to a speedy trial. U.S. CONST. amend. VI, N.H. CONST. pt. I, art. 14; *Barker v. Wingo*, 407 U.S. 514 (1972); *State v. White*, 116 N.H. 687, 366 A.2d 872 (1976). There is no doubt that the thirteen-month delay in this misdemeanor case triggers an examination into the question whether the defendant was denied his right to a speedy trial. *See State v. Cole*, 118 N.H. 829, 831, 395 A.2d 189, 190 (1978). Length of delay, however, is not the determinative factor. *Barker v. Wingo*, *supra* at 530–33; *State v. Novosel*, 120 N.H. 176, 182, 412 A.2d 739, 744 (1980). In order to determine whether the defendant has been denied his right to a speedy trial, we must balance four factors: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right, and (4) any prejudice to the defendant. *Barker v. Wingo supra; State v. Novosel supra; State v. Blake*, 113 N.H. 115, 122, 305 A.2d 300, 305 (1973). Upon examining these factors, we find the delay in this case was justified.

Absent a rule or statute setting time limits, a defendant has a responsibility to assert his right to a speedy trial. *See Barker v. Wingo*, *supra* at 531–32. In the companion cases that the dissent notes were dismissed for lack of a speedy trial, each of the defendants had requested a speedy trial. Although the defendant is correct in pointing out that the failure to demand a speedy trial may not be held against a defendant who is without counsel and who is unaware of his speedy trial right, *United States v. Butler*, 426 F.2d 1275, 1278 (1st Cir. 1970), we think that this case does not require such deferential treatment. Weitzman is not a defendant to whom the assistance of counsel was denied but is a man who, as a matter of conscience, knowingly and intelligently made the decision to proceed without an attorney. The right to represent oneself is guaranteed to a criminal defendant even though the choice to conduct his own defense may be to his detriment. *Faretta v. California*, 422 U.S. 806, 834 (1975). Once a defendant has made that choice, he cannot later "complain that the quality of his own

defense amounted to a denial of 'effective assistance of counsel.' " *Id.* at 834–35 n.46. We conclude that the defendant's failure to demand a speedy trial may be weighed against him.

That conclusion is also supported by the fact that this failure accounts in part for the delay. The State maintains that the reason for the delay was a backlog in the court calendar due to pending cases resulting from prior mass demonstrations. Although responsibility for that situation rests with the State, this reason weighs less heavily against it than would deliberate delay. *Barker v. Wingo, supra* at 531. It is reasonable to assume that those defendants who request a speedy trial are given preference as to early court dates.

Perhaps the decisive factor in this case is that the defendant was not prejudiced by the delay. He was not incarcerated pending trial nor was his ability to conduct his defense impaired by the delay. Relying on *State v. Cole*, 118 N.H. 829, 395 A.2d 189 (1978), the defendant alleges prejudice presumed from the delay itself. The *Cole* decision, however, was not based on presumed prejudice alone but on a consideration of all the facts. *State v. Cole*, 118 N.H. at 831–32, 395 A.2d at 191. In particular the court relied on the facts that Cole "constantly asserted his right and the State established no valid excuse for the delay." *Id.* Since the facts of the *Cole* case are the converse of the facts in this case, we find no error in the trial court's determination that Weitzman was not deprived of his right to a speedy trial.

■■ Next we consider the defendant's argument that he was denied his sixth amendment right to an impartial jury by the trial judge's refusal either to ask the jurors specific questions on voir dire or to allow the defendant to conduct his own voir dire. In this State, the manner in which voir dire is conducted is wholly within the sound discretion of the trial judge. *State v. Dunbar*, 117 N.H. 904, 905, 379 A.2d 831, 832 (1977); *Patterson v. Corliss*, 112 N.H. 480, 486, 298 A.2d 586, 590 (1972). Except in capital cases, voir dire in this State has traditionally been conducted by the court and not by counsel. *State v. Colby*, 116 N.H. 790, 793, 368 A.2d 587, 590 (1976); *see* McGuirk & Tober, *Attorney-Conducted Voir Dire: Securing an Impartial Jury*, 15 N.H.B.J. 1, 1–2 (1973). We cannot say that the trial judge abused his discretion in refusing to allow the defendant to conduct his own voir dire.

■■ Nor do we find any error in the trial judge's refusal to ask the jurors specific questions. "It is within the sound discretion

of the trial court to accept or reject a party's proposed questions for the examination of prospective jurors." *Soucy v. Koustas,* 120 N.H. 381, 382, 415 A.2d 335, 335 (1980). Rather than ask several specific questions, the trial judge commendably expanded upon the minimal questions required by RSA 500-A:22 (Supp. 1979) by asking the prospective jurors if they had any opinions on protest, civil disobedience, or the Seabrook demonstrations as a result of any newspaper, television, radio, or other reports. The defendant argues that, because of the widespread publicity of the Seabrook demonstrations, there was a "compelling need" for a more detailed inquiry into potential juror prejudice. When the publicity does not result in inherent prejudice, allegations of adverse publicity are not enough. *State v. Laaman,* 114 N.H. 794, 799, 331 A.2d 354, 358 (1974), *cert. denied,* 423 U.S. 854 (1975). "[T]he defendant must prove that the publicity complained of resulted in actual identifiable prejudice which prevented him from obtaining a fair trial." *Id.; see Irvin v. Dowd,* 366 U.S. 717, 722–23 (1961); *Mikus v. United States,* 433 F.2d 719, 723 (2d Cir. 1970). The fact that the defendant was a Seabrook demonstrator does not automatically entitle him to a specific inquiry into potential juror prejudice. *Cf. Ristaino v. Ross,* 424 U.S. 589, 594, 597 (1976); *State v. Gullick,* 120 N.H. 99, 103, 411 A.2d 1113, 1115–16 (1980). The trial judge's inquiry, although a general one, was designed to uncover precisely the type of prejudice which one might reasonably expect to find among veniremen in a case such as this one. We hold that this inquiry was constitutionally sufficient.

■ The defendant's next argument relates to use of the competing harms defense, RSA 627:3. This court has previously held that the defense is unavailable in nuclear power plant criminal trespass cases. *State v. Dorsey,* 118 N.H. 844, 845–46, 395 A.2d 855, 857 (1978); *State v. Dupuy,* 118 N.H. 848, 854, 395 A.2d 851, 855 (1978). In this case, the defendant argues that the defense of competing harms bears upon the element of *knowledge* in the criminal trespass statute, RSA 635:2. In essence, he argues that nuclear power policy involves competing harms considerations and that, therefore, he entered the Seabrook construction site knowing that he had a license or privilege to do so under the competing harms statute. The defendant in *State v. Koski,* 120 N.H. 112, 114–15, 411 A.2d 1122, 1123 (1980), raised the same argument. In that case, we did not have to decide the issue because "there was evidence before the jury regarding the competing harms statute as it related to . . .

[the defendant's] knowledge" and she therefore had "no cause to complain." *Id.* We noted, however, that *Dorsey* was controlling. *Id.* In this case the judge allowed no evidence of the competing harms defense. We find no error.

The defendant's proposed use of the competing harms defense goes to his *motive* for entering the construction site, not to his knowledge of having a license or privilege to do so. RSA 635:2 does not require that a defendant intend to commit a crime but only that he knowingly commit an act that is in fact a violation of the law. *See* W. LaFave & A. Scott, Handbook on Criminal Law § 47 at 362–63 (1972); Model Penal Code § 2.02, Comment 11 (Tent. Draft No. 4, 1955).

"A person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist." RSA 626:2 II(b). In order to act "knowingly," a person need only be aware that it is practically certain that his conduct will cause a prohibited result. C. Torcia, Wharton's Criminal Law § 27 at 138 (14th ed. 1978). Although the defendant argues that his reasons for entering the Seabrook site privileged him to enter, he was aware from the posted "No Trespassing" signs that the State would not view the event the same way. *See* Comments to RSA 635:2 in New Hampshire Criminal Code (Equity Pub. Co. 1979). It was not error, therefore, for the trial judge to refuse to admit the competing harms defense as evidence of the defendant's knowledge.

■■■■ Although a laudable motive is not a defense, it may lead a jury to acquit the defendant though he has committed an act which the law regards as criminal. LaFave & Scott, *supra* § 29 at 208. On that premise, the defendant argues that he was denied due process by the trial court's refusal to allow the jury to hear his argument on the competing harms defense and, on that basis, find him not guilty. We disagree. Jury nullification is an historical prerogative of the jury; it is not a right of the defendant. *See United States v. Dougherty,* 473 F.2d 1113, 1130–37 (D.C. Cir. 1972). *See generally* J. Alexander, A Brief Narration of the Case and Trial of Peter Zenger (1963); F. Woleslagel, Jury, 101–09 (1975). Furthermore, throughout the presentation of his case to the jury, the defendant stressed his moral conviction in committing the acts complained of in the indictment. Additionally, the judge correctly told the jury: "[Y]ou are entitled to act upon

your own conscientious feeling about what is a fair result in this case." The jury could have found the defendant not guilty had it wished to do so. *See United States v. Dougherty, supra* at 1135; *State v. Koski*, 120 N.H. at 114-15, 412 A.2d at 1123.

The defendant's argument that the judge's jury instruction was erroneous also centers around the competing harms issue and the provision in the New Hampshire Constitution that holds that rights of conscience are inalienable. N.H. CONST. pt. I, art. 4. After reading the statute, the judge told the jury:

> "To show that the defendant, Mr. Weitzman, acted knowingly with respect to entering secured premises and that such was knowingly without permission or privilege or the right to be there the State must show beyond a reasonable doubt that the defendant, Donald Weitzman in this case, knew consciously, was aware, that he had no right to enter such premises. That he was aware of his conduct and this can be shown, as I have alluded to earlier, either by direct or circumstancial evidence. But it must be shown so that you are convinced beyond a reasonable doubt that the defendant, Mr. Weitzman, acted knowingly, with awareness that he had no privilege or right, consent of the owners to be on the property and that he knowingly entered secured premises.
>
> Privilege or license in this statute means that a person, such as Mr. Weitzman the present defendant, must be shown to have entered without right or without the consent of the owner or a person in authority to give such right or consent. A further explanation of the meaning of privilege or license, means the defendant must have had permission to enter the premises."

■ The defendant argues that, by equating "privilege" with "right" and "license" with "consent," the trial judge precluded the jury from considering his claim that he believed he was privileged to enter the site because his act was one of conscience. For the most part, the judge's explanations of "privilege" and "license" were accurate. A "license" implies permission: "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Dunleavy v. Constant*, 106 N.H. 64, 66, 204 A.2d 236, 238 (1964); *see* BLACK'S LAW DICTIONARY 830 (5th ed. 1979). One definition of "privilege" is: "A *right*, power, franchise,

or immunity held by a person or class, against or beyond the course of the law." (Emphasis added.) BLACK'S LAW DICTIONARY at 1077. Although the judge's charge might arguably have limited the definition of "privilege," taken as a whole the jury charge was not prejudicial to the defendant. *See State v. Wentworth*, 118 N.H. 832, 841, 395 A.2d 858, 864 (1978).

██ Finally, we consider the defendant's argument that the trial judge's refusal to disqualify the jury pool because of under-representation of blacks and persons under age thirty in the venire violated his sixth amendment right to trial by a jury selected from a fair cross-section of the community. We recently found that there was no unconstitutional underrepresentation of blacks and young people in the jury venires of Rockingham County. *State v. Elbert*, 121 N.H. 43, 424 A.2d 1147 (1981). The defendant, therefore, has failed to establish a violation of his sixth amendment right to an impartial jury.

*Affirmed.*

BOIS, J., did not sit; DOUGLAS, J., dissented.

DOUGLAS, J., dissenting: On October 8, 1978, the defendant, along with thirty or so others, was arrested. Five weeks later, he was found guilty in Hampton District Court. He immediately appealed to the superior court, but was not arraigned until more than a year later, January 2, 1980. To the extent that the State relies on the flood of Seabrook cases as a reason for the delay, I find the argument unpersuasive. On July 3, 1979, almost eight hundred Seabrook cases were dismissed, thereby clearing the docket of the backlog of cases dating from the 1,414 mass arrests in 1977.

When I dissented in *State v. Dufield*, 119 N.H. 28, 33, 398 A.2d 818, 821 (1979), I recommended a speedy trial rule. In doing so, I recognized an exception for "unusual docket congestion due to mass arrests." *Id.* at 34, 398 A.2d at 822. But in this case, the docket crowding in Rockingham County had ended some six months before the defendant was arraigned. The defendant in this case requested no continuances that delayed the proceeding. In two cases companion to this defendant's case, a different Trial Judge (*Randall*, J.) dismissed the cases for lack of a speedy trial. *See State v. William Smith*, S-137-79 and *State v. Steven Birnbaum*, S-195-79.

Even under *Barker v. Wingo,* 407 U.S. 514 (1972), this case should be dismissed to provide an incentive for improved case-processing:

"[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case await its turn."

*Barker v. Wingo, supra* at 538 (White, J., concurring).

Recently, the Chief Justice of the United States in his twelfth annual "State of the Judiciary" address to the American Bar Association in Houston, Texas, strongly supported speedy trial from the vantage point of society at large. Said Warren Burger:

"[T]he deterrent effect of swift and certain consequences: swift arrest, prompt trial, certain penalty and— at some point—finality of judgment"

would improve the criminal justice system. *The National Law Journal,* February 16, 1981, at 27, col. 1.

As this court said in *State v. Cole,* 118 N.H. 829, 831, 395 A.2d 189, 190 (1978):

"A delay of over fourteen months from the time of arrest to the time of trial is substantial, especially in a misdemeanor case such as this. . . . Even though he was free on bail during the delay, the defendant was constantly subject to call by the court. A person in such a situation is unable to lead a 'normal life.' . . . One of the basic reasons for the speedy trial right is 'to minimize [the] anxiety and concern of the accused' . . . ."

(Citations omitted.) I find that rationale applicable to this case as well.

Accordingly, I dissent on the issue of speedy trial.